A95A0619. CURRY v. THE STATE.
(458 SE2d 385)

McMURRAY, Presiding Judge.

Defendant was indicted for the offenses of aggravated assault and armed robbery. The evidence adduced at a jury trial reveals the following: At about 11:30 in the evening on December 3, 1992, defendant and an accomplice entered a liquor store in Athens, Georgia, and shot the owner of the store (during a gun battle) as he was preparing to close the business. Although wounded, the victim returned fire and shot defendant just before the assailants made off with the store's cash register. A few minutes later, defendant appeared at a neighbor's home complaining that he had been wounded during a drive-by shooting. Defendant was taken to a hospital and a physician found a bullet lodged "in the deep musculature of [his left] leg." Further ex-

amination revealed that the wound was not life-threatening; that extracting the bullet via surgical means was medically unnecessary and that such a procedure presented unwarranted health or safety risks to defendant. Nonetheless, law enforcement officials pressed defendant's physician to remove the bullet, but he refused to perform the surgery required to retrieve the evidence without defendant's consent. The physician did, however, give defendant the option of surgery after advising defendant that police officials wanted the bullet removed; that extracting the bullet was medically unnecessary and that the surgical procedure posed a risk of certain medical complications. Defendant declined to consent to surgery and the State filed a petition (in the superior court) to force surgical removal of the bullet. The trial court granted this petition, but defendant's physician remained firm. He would not perform surgery "for other than medical reasons . . ." without his patient's consent and, to this extent, defendant would not yield. As a consequence, surgery was never performed and the bullet remains in defendant's leg.

After the jury found defendant guilty of aggravated assault and armed robbery, the trial court merged the aggravated assault charge with the armed robbery charge and sentenced defendant to life in prison. This appeal followed the denial of defendant's motion for new trial. *Held*:

1. In his first two enumerations, defendant contends the trial court erred in ordering surgical removal of the bullet from his leg and in permitting testimony regarding his refusal to consent to surgery. Specifically, defendant argues that the trial court's order infringes upon his Fourth Amendment right against unreasonable intrusions into his body and that testimony regarding his refusal to consent to the surgery infringed upon his state and federal constitutional rights against coerced self-incrimination by sanctioning an inference that "he 'had something to hide.' "

"[E]vidence of a defendant's refusal to comply with a lawful court order has been held to be admissible in other [jurisdictions] on the ground that '(a)n attempt by a criminal defendant to suppress evidence is probative of consciousness of guilt and admissible on that basis.' *United States v. Wagner*, 834 F.2d 1474, 1484 (9th Cir. 1987) (quoting *United States v. Castillo*, 615 F.2d 878, 885 (9th Cir. 1980))." *United States v. Jackson*, 886 F2d 838, 845 (7th Cir. 1989). Georgia courts have embraced parallel logic, adopting "[t]he broad premise . . . that a statement or conduct by [a] defendant which indicates a consciousness of guilt is admissible against him. *Bridges v. State*, 246 Ga. 323, 324 (2) (271 SE2d 471) (1980)." *Parker v. State*, 181 Ga. App. 590, 591 (2) (353 SE2d 83). We cannot say, however, that this principle is broad enough to encompass reasonable opposition to unlawful governmental intrusions. To say otherwise would not

only chill justified resistance to unlawful police practices, but would leave criminal suspects with the unfavorable option of either giving up the right to privacy or resisting unlawful police intrusions knowing that such opposition will be available to support an inference of guilt without running afoul of state and federal prohibitions against coerced self-incrimination. Similar was the presentation offered by government officials in *Howard v. State*, 237 Ga. 471, 474 (228 SE2d 860), where the Georgia Supreme Court held that a defendant's silence in the face of actions amounting to unlawful police interrogation is not admissible to support an inference of guilt. Id. at 475.

The controlling issue in the case sub judice is therefore whether defendant was constitutionally justified in defying law enforcement efforts to have the bullet surgically extracted from his leg. To this extent, we observe that the State's compelling need to retrieve evidence of a crime is, alone, insufficient to justify an intrusion into the body of a living human being. There must also be proof that the surgical procedure required to accomplish the seizure is reasonable, i.e., unsubstantial. *Creamer v. State*, 229 Ga. 511, 514 (2), 515 (192 SE2d 350). Of course, the measure for determining what bodily intrusions are "reasonable" or "unsubstantial" is not always a subject for rigid objective analysis. Each case must be measured on its own merits. *Schmerber v. California*, 384 U. S. 757 (86 SC 1826, 16 LE2d 908). We are guided in the case sub judice by the United States Supreme Court's decision in *Winston v. Lee*, 470 U. S. 753, 754 (105 SC 1611, 84 LE2d 662), where an order directing surgical removal of a bullet from a criminal suspect was found to be too obtrusive under Fourth Amendment standards.[1] The Supreme Court decided that society's interest in accurately determining guilt or innocence (as measured by the strength of other evidence supporting the government's case) was outweighed by the severe and involuntary nature of the intrusion into the suspect's body. "Surgery without the patient's consent, performed under a general anesthetic to search for evidence of a crime, involves a virtually total divestment of the patient's ordinary control over surgical probing beneath his skin." Id.

In the case sub judice, it is undisputed that a general anesthetic would have been required to surgically extract the bullet from defendant's leg and there is proof that the surgery posed a risk to defendant's health. In this regard, defendant's physician testified that the bullet was buried deep within the muscle of his patient's left leg; that the projectile was close to vital bodily components; that there was no medical reason to remove the bullet and that the procedure

---

[1] In *Winston,* the surgery required to accomplish the seizure involved debate over health or safety risks to the suspect and a bodily intrusion which would have likely been more than skin deep.

required to retrieve the evidence posed an unnecessary risk to defendant's health, including the possibility of infection and paralysis. Under these circumstances and in light of the overwhelming wealth of alternative evidence supporting the State's case, the trial court's order requiring surgical removal of the bullet from defendant's leg oversteps defendant's Fourth Amendment right to be secure in his person. Id. at 755. Defendant was therefore justified in resisting efforts by law enforcement officials to have the bullet forcibly removed from his leg. And since reasonable opposition to unlawful governmental intrusion provides no basis for an unfavorable inference of guilt, the trial court erred in allowing testimony regarding defendant's resistance to removal of the bullet from his leg. However, " 'the determination of whether this was harmful or harmless error must be determined when "juxtaposed against the strength of the evidence of [defendant's] guilt. (Cit.)" (Cit.)' *Glanton v. State*, 189 Ga. App. 505, 507 (3) (376 SE2d 386) (1988)." *Blige v. State*, 203 Ga. App. 151 (2), 152 (416 SE2d 160). In this regard, a neutral eyewitness positively identified defendant as a perpetrator of the armed robbery; a relative observed defendant and several others in close proximity to handguns (on a bed in defendant's home) shortly before the armed robbery; defendant appeared at a neighbor's home a few minutes after the armed robbery suffering from a gunshot wound to the leg and the victim's spouse saw defendant the day before the armed robbery lurking outside her husband's liquor store. In light of this overwhelming evidence of defendant's guilt, we find it highly unlikely that admission of testimony regarding defendant's refusal to consent to surgical removal of the bullet from his leg influenced the jury's verdict. *Hamilton v. State*, 239 Ga. 72, 76-77 (235 SE2d 515); *Carpenter v. State*, 167 Ga. App. 634, 640 (7), 641 (307 SE2d 19).

2. Defendant next contends the victim's spouse was exposed to an unduly suggestive pretrial photographic lineup. This contention presents no grounds for reversal since defendant failed to object when this witness testified that she saw defendant lurking outside her husband's liquor store on the day before the armed robbery. *May v. State*, 159 Ga. App. 565, 566 (2) (284 SE2d 70).

3. In his final enumeration of error, defendant contends his life sentence is void because OCGA § 17-10-1 (a) (1) requires that he be given a determinative sentence for a specific number of years. This contention was decided adversely to defendant in *Jefferson v. State*, 209 Ga. App. 859, 862 (2) (434 SE2d 814). Defendant also contends his life sentence constitutes cruel and unusual punishment. This contention is not supported by argument or citation of authority and is therefore deemed abandoned pursuant to Court of Appeals Rule 27 (c) (2).

*Judgment affirmed. Andrews and Blackburn, JJ., concur.*

DECIDED JUNE 1, 1995 —
RECONSIDERATION DENIED JUNE 20, 1995 — 

*D. Todd Wooten*, for appellant.
*Harry N. Gordon, District Attorney, Richard L. Dickson, Assistant District Attorney*, for appellee.