## S01A1405. THE STATE v. KACHWALLA.
### (561 SE2d 403)

BENHAM, Justice.

A police officer issued a uniform traffic citation charging appellee Kaemptah Kachwalla with driving under the influence of drugs to the extent he was a less safe driver. OCGA § 40-6-391 (a) (2). Appellee filed a demurrer in which he contended, among other things, that OCGA § 40-6-391 (a) (2) is an unconstitutional violation of the equal protection clauses of the state and federal constitutions. Relying on our decision in *Love v. State*, 271 Ga. 398 (3) (517 SE2d 53) (1999), the trial court granted the demurrer, concluding that OCGA § 40-6-391 (a) (2) "suffers the same constitutional infirmities as OCGA § 40-6-391 (a) (6) [which was found to violate equal protection in *Love*] and thus must be stricken as violative of the equal protection clause of the Fourteenth Amendment to the United States Constitution." Pursuant to OCGA § 5-7-1 (a) (1), the State has filed an appeal from the trial court's decision.

This case is concerned, as was *Love v. State*, with the interplay of subsections (a) and (b) of OCGA § 40-6-391. Subsection (a) sets out six methods of proving that a person is driving under the influence of alcohol or drugs. See *Lester v. State*, 253 Ga. 235 (2) (320 SE2d 142) (1984). Subsection (b) notes that legal entitlement to use a drug is not a defense to a DUI charge, but that a person charged with DUI who is legally entitled to use a drug other than alcohol does not vio-

late the statute unless "such person is rendered incapable of driving safely. . . ." In *Love*, the issue was whether constitutional equal protection guarantees were violated when the driver was charged with the per se violation found in subsection (a) (6), which makes it illegal for a person to be driving while there is any amount of marijuana or controlled substance in the person's blood or urine. Subsection (a) (6) mandates conviction for the per se DUI violation for a driver with metabolites of illegally-used marijuana in his system, while under subsection (b), a driver with metabolites of legally-used marijuana in his system could not be found guilty of the per se violation and could only be found guilty of DUI if the State established that the driver was impaired. Noting that the pharmacological effects of marijuana do not differ depending on whether the marijuana was legally or illegally used, we determined in *Love* that the legitimate state interest in public safety was not served by the disparate treatment afforded a driver charged with an (a) (6) violation.

In the case at bar, the defendant was not charged with a violation of (a) (6); instead, he was charged with violating (a) (2), which prohibits a person from driving "while . . . [u]nder the influence of any drug to the extent that it is less safe for the person to drive. . . ." An (a) (2) violation, unlike an (a) (6) violation, is not a per se violation since impaired driving ability is an element of the crime that must be proven to obtain a conviction.[1] Compare *Love* and *Stevenson v. State*, 264 Ga. 892 (2) (453 SE2d 18) (1995) with *Kevinezz v. State*, 265 Ga. 78 (2) (454 SE2d 441) (1995). Since impaired driving ability is an element of (a) (2), we are not confronted with the disparate treatment found with (a) (6), where whether a driver is guilty of the per se violation is dependent upon whether the drug ingested by the driver was one the driver was legally entitled to use.

The defendant in the case at bar maintains that he nonetheless faced unconstitutional disparate treatment because § 40-6-391 contains two levels of impairment necessary to convict a driver of driving under the influence of drugs: "less safe to drive" found in subsection (a), and "rendered incapable of driving safely" found in subsection (b), with the level of impairment the State must prove dependent upon whether the driver was legally entitled to use the drug. After reviewing the history of our DUI statute and the case law interpreting it, we conclude that one accused of violating (a) (2) does not suffer disparate treatment because "less safe to drive" and "rendered incapable of driving safely" are equivalent standards, legally,

---

[1] Impaired driving ability is not an element of an (a) (6) offense and need not be proved. Compare OCGA § 40-6-391 (a) (1)-(4), all of which require the State to establish that the driver was impaired, i.e., that the driver's ingestion of drugs or alcohol made it "less safe for the person to drive."

historically, and semantically.

While Georgia has had a statute generally prohibiting "driving under the influence" since 1910, it was not until 1953 that the DUI statute contained a specific standard of impairment. The act regulating automobiles and their use enacted in 1910 made it unlawful for "any person who is intoxicated . . . to propel or operate [an automobile]" on any Georgia highway. Ga. L. 1910, pp. 90, 93, § 9. In a special legislative session called by the governor in 1915, the General Assembly passed a law which prohibited the operation of a motor vehicle on public streets while "under the influence" of intoxicating liquors or drugs. Ga. L. 1915 (Ex. Sess.), p. 107, § 15.[2] Operating a motor vehicle while "under the influence of intoxicating liquors or drugs" remained the standard until 1953, when the General Assembly, while maintaining that standard for intoxicating liquors, made it unlawful for a person to drive while under the influence of a drug "to a degree which renders him incapable of safely driving a vehicle. . . ." Ga. L. 1953, p. 556, § 47. See also Ga. L. 1921, p. 255; Ga. L. 1927, p. 226, § 13.

During the decades when the standard was "under the influence," the Court of Appeals defined that term as the condition a driver finds himself in "when he is so affected by intoxicating liquors as to make it less safe for him to operate such vehicle than it would be if he was not affected by such intoxicating liquor." *Hart v. State*, 26 Ga. App. 64 (105 SE 383) (1920). See also *Harper v. State*, 91 Ga. App. 456 (86 SE2d 7) (1955). In *Cook v. State*, 220 Ga. 463 (2) (139 SE2d 383) (1964), this Court upheld the "under the influence" standard against a charge it was unconstitutionally vague, observing that the phrase was a "commonly used [term] with a well-recognized meaning" that needed no further elaboration, and cited the *Hart-Harper* standard. See also *Kevinezz v. State*, supra, 265 Ga. at 82, where this Court noted that "driving under the influence" and "to the extent it is less safe for the person to drive" are "equivalent concepts describing the same physical condition."

In *Cargile v. State*, 244 Ga. 871 (262 SE2d 87) (1979), where the 1974 version of the statute was under attack as unconstitutionally vague, this Court acknowledged that "under the influence" meant "it is less safe for such person to operate a motor vehicle" and announced it was unable to discern a difference between "it is less safe for such person to operate a motor vehicle" found in subsection (a) (1) of the 1974 statute and "renders him incapable of safely driving" found in

---

[2] This enactment was declared unconstitutional in *Jones v. State*, 151 Ga. 502 (107 SE 765) (1921), because it was not part of the gubernatorial proclamation for the extraordinary session of the legislature. The 1921 session of the General Assembly properly enacted a DUI statute that provided the same standard as the 1915 version. Ga. L. 1921, p. 255.

subsections (a) (2) and (3). If there were a difference, the Court concluded it was not of constitutional significance. Other appellate decisions incorporated the *Cargile* decision equating the standards into their holdings. See, e.g., *Groom v. State*, 187 Ga. App. 398 (2) (370 SE2d 643) (1988) and *Peters v. State*, 175 Ga. App. 463 (1) (333 SE2d 436) (1985), overruled on other grounds, *Hogan v. State*, 178 Ga. App. 534 (343 SE2d 770) (1986) ("the requirement of proof that the driver be under the influence of alcohol to a degree which renders him less safe or incapable of safely driving"); *Jones v. State*, 168 Ga. App. 106 (308 SE2d 209) (1983) (since "less safe" and "incapable of driving safely" are equivalent, jury charge on "less safe driver" set forth proper standard of guilt and there was no need to give charge on "incapable of safely driving."); *Kuptz v. State*, 179 Ga. App. 150, 154 (345 SE2d 670) (1986) (Judge Beasley's special concurrence) (subsection (a) (1) requires proof that driver's condition was such that he was under the influence of alcohol to a degree which renders him incapable of safely driving, i.e., when it appears that it is less safe for such a person to operate a motor vehicle than it would be if he were not so affected).

The decision in *Cargile* that there is no discernible difference between "it is less safe for the person to drive" and "renders him incapable of safely driving" is also correct semantically. Assuming that one who has not consumed an intoxicant drives safely, one is guilty of driving under the influence if one's ingestion of an intoxicant has affected one to the extent that one is a less safe driver than one would have been had one not been affected by the intoxicant. Stated another way, one is driving under the influence when the ingestion of an intoxicant has made one unable to drive as safely as one would have had he/she not ingested. "Unable to drive safely" and "rendered incapable of driving safely" state the same proposition.

The standards set in place in 1953 — "under the influence" for intoxicating liquors and "under the influence . . . to a degree which renders him incapable of safely driving" when drugs or a combination of drugs and alcohol were involved — remained in place until 1988, when the General Assembly made it illegal for a person to drive under the influence of alcohol, any drug, or any combination thereof "to the extent that it is less safe for the person to drive[,]" and set out the "incapable of driving safely" standard in subsection (b). Ga. L. 1988, pp. 1893, 1895, § 2. Since the General Assembly is presumed to know what this Court has held the law to be on a particular subject when the legislature enacts laws (*Margeson v. Givens*, 231 Ga. 552, 553 (203 SE2d 186) (1974)), we presume the General Assembly knew in 1988, when it enacted § 40-6-391 (a) (1)-(4) with a "less safe" standard and § 40-6-391 (b) with a "incapable of driving safely" standard, that the appellate courts of this State had repeatedly held that the

two standards were the equivalent of each other. See *Spence v. Rowell*, 213 Ga. 145, 150 (97 SE2d 350) (1957) (legislature conclusively presumed to have known when it passed laws using the term "city" that Supreme Court of Georgia had said the words "city" and "town" were not synonymous).

The *Cargile* statement of equivalency was not mentioned in *Steele v. State*, 260 Ga. 835 (400 SE2d 1) (1991), where this Court upheld the constitutionality of the 1988 version of the DUI statute against a challenge that subsection (b) made the statute vague because it authorized a DUI conviction only when a driver was rendered incapable of safely driving as the result of the legal use of a drug other than alcohol. In *Steele*, we held the DUI statute was not unconstitutionally vague because it was clear what the statute prohibited when it was read as a whole and not piecemeal as the defendant suggested. The dicta in which we stated that "less safe" and "rendered incapable of driving safely" were two different standards is a misstatement and should not be followed. See also *Proo v. State*, 192 Ga. App. 169 (384 SE2d 197) (1989) (where the issue was whether the 1988 version of the DUI statute repealed the prohibition against driving under the influence of alcohol).

Because "less safe to drive" and "rendered incapable of driving safely" set the same standard of impairment necessary to establish that a driver is driving under the influence of alcohol or other intoxicating substance, the trial court erred when it concluded that OCGA § 40-6-391 (a) (2) violates the equal protection clauses of the U. S. and Georgia constitutions. Accordingly, the trial court's grant of the defendant's general demurrer is reversed.

*Judgment reversed. All the Justices concur.*

DECIDED MARCH 25, 2002.

*Gerald N. Blaney, Jr., Solicitor-General, Stephen A. Fern, Gary S. Vey, Carole C. Korn, Jeffrey P. Kwiatkowski, Emilien O. Loiselle, Jr., Jonathan D. Aurelia, Sharon C. Dickson, Assistant Solicitors-General*, for appellant.

*Clark & Towne, David E. Clark, Jessica R. Towne, Richard T. Ryczek, Jr., Wystan B. Getz, Christine A. Koehler*, for appellee.

*Christopher S. Brasher, Assistant Attorney General*, amicus curiae.