## A03A0469. BAIRD v. THE STATE.
(580 SE2d 650)

PHIPPS, Judge.

Andrew Baird appeals his conviction of driving under the influence of alcohol to the extent that he was a less safe driver. He argues, among other things, that the trial court erred by instructing the jury that it could infer, from his refusal to take a chemical test, that the test would have shown the presence of alcohol "which impaired his driving." We agree that this instruction was improper, and we reverse.

On appeal from a criminal conviction, the defendant no longer enjoys a presumption of innocence, and the evidence must be viewed in the light most favorable to the verdict.[1] So viewed, the evidence shows that on the night of June 17, 2000, Dawson County Deputy Sheriff Mary Lundy saw a truck pulling a trailer with a boat. At one point, the trailer veered off the right side of the road. Lundy activated the lights in her patrol car, but the truck did not stop. She then turned on her siren, and the truck "did eventually pull over."

As Lundy approached the driver's side of the truck, she smelled alcohol. The driver, Baird, had "very red, very watery" eyes and a flushed face, but he spoke normally and politely and did not stagger when he exited the truck. Baird told her that he had "had drinks earlier at the lake."

Lundy asked Baird to perform some field sobriety tests, and he agreed. She told him to recite the alphabet from A to W "without singing or rhyming." Baird "did it correctly," except he failed to stop at W. Lundy then asked Baird to perform four sequences of an "index to thumb" test while counting aloud, which she demonstrated for the jury. Baird counted silently and "only went through it twice." Finally, Lundy asked Baird to breathe into an alco-sensor, which tested positive for the presence of alcohol.

Lundy arrested Baird and read him his implied consent rights from a card she carried with her. Baird "immediately refused" to take an Intoxilyzer 5000 breath test, saying his attorney "had told him never to take any . . . breath test." Lundy later found three empty beer cans in Baird's truck and a cooler in the back containing thir-

---

[1] *Shockley v. State*, 256 Ga. App. 892 (570 SE2d 67) (2002).

teen beers. This was the first DUI stop that Lundy had handled by herself.

Baird was charged with driving under the influence to the extent that it was less safe for him to drive and with failure to maintain lane. At trial, Baird's friend Tina Painter testified that on the morning of June 17, Baird had brought his boat, at her invitation, to a park where she was playing in a softball tournament. In between games, Painter, Baird and others had gone out on the boat, "talking and socializing" and drinking beer. Painter had seen Baird drink "no more than three" beers during an eight-hour period. In Painter's opinion, Baird had not been under the influence of alcohol when he had left to drive home that evening.

Baird testified that he had drunk three beers that day. He explained that he had not stopped his truck immediately because the large boat likely had obscured his view of Lundy's lights, and after hearing the siren he had waited for a safe spot to pull over. He said that he had agreed to perform the field sobriety tests because he had not felt that he was under the influence of alcohol. He had not heard Lundy ask him to stop reciting the alphabet at W, and he thought he had followed her instructions accurately on the index to thumb exercises. According to Baird, Lundy had read the implied consent warning in a fast, confusing manner and he had told her that he did not understand it. At the police station, another officer asked Baird to take the Intoxilyzer test, but he refused because a woman who had been "spitting" and "wild" had just used the machine and Baird was afraid it had not been cleaned.

The jury found Baird guilty of DUI but not guilty of failure to maintain lane.

1. Baird claims that the court improperly instructed the jury about the inference that could be drawn from his refusal to take the Intoxilyzer test. The court told the jury:

> In any criminal trial the refusal of the defendant to permit chemical analysis to be made of his blood, breath, urine or other bodily substance at the time of his arrest shall be admissible as evidence against him. I further charge you that the refusal itself may be considered as positive evidence creating an inference that the test would show the presence of alcohol or other prohibited substances *which impaired his driving*. However, such an inference may be rebutted.[2]

OCGA § 40-6-392 (d) provides that a defendant's refusal to submit to chemical testing of a bodily substance is admissible as evi-

---

[2] (Emphasis supplied.)

dence against him. The statute, however, does not say what inferences a factfinder may draw from the defendant's refusal to agree to such testing. We recently addressed that question in *Bravo v. State*,[3] another DUI case.

In *Bravo*, the trial court charged the jury that defendant Bravo's refusal to take a chemical breath test " 'may be considered as positive evidence creating an inference that the test would show the presence of alcohol. However, such an inference may be rebutted.' "[4] Bravo argued that this charge had improperly shifted the burden of proof to him. We disagreed, pointing out that the charge merely had told the jury that they "may" infer the presence of alcohol from Bravo's refusal to take the test, not that they "shall" do so.[5] Because the inference was permissible rather than mandatory, and because other instructions to the jury clarified that the burden of proof rested with the State, the charge was proper.

In this case, as in *Bravo*, the disputed charge used the word *may* rather than *shall*; and other charges made it clear that the State bore the ultimate burden of proof at trial. But the charge here differed in one critical respect from the one given in *Bravo*. The court told the jury that they could infer, from Baird's refusal of chemical testing, that the test would have shown the presence of alcohol or other prohibited substances *which impaired his driving*. This additional phrase allowed the jury to infer from Baird's refusal of testing not only that the test would have shown the presence of alcohol in his body, but that the alcohol impaired his driving. Our law does not permit the latter inference.

To win a DUI conviction under the "less safe driver" statute,[6] the State must prove that the defendant had impaired driving ability as a result of drinking alcohol.[7] As we noted in *Evans v. State*,[8] "impaired driving ability depends solely upon an individual's response to alcohol."[9] Because individual responses to alcohol vary, the presence of alcohol in a defendant's body, by itself, does *not* support an inference that the defendant was an impaired driver. The charge in this case improperly allowed such an inference.

The State argues that any error in the charge was harmless. Error in a jury charge is harmless "where there is no reasonable probability that [it] misled the jury or permitted a defendant's con-

---

[3] 249 Ga. App. 433 (548 SE2d 129) (2001).

[4] Id. at 434 (2).

[5] Id. at 434-435.

[6] See OCGA § 40-6-391 (a) (1).

[7] *State v. Kachwalla*, 274 Ga. 886, 887 (561 SE2d 403) (2002).

[8] 253 Ga. App. 71 (558 SE2d 51) (2001).

[9] Id. at 76 (2) (a).

viction on an erroneous theory."[10] The charge in question could have misled the jury into thinking that the State shouldered its burden of proving that element simply by showing that Baird refused chemical testing. Moreover, although the evidence of Baird's impairment was sufficient to support the DUI conviction, it was not overwhelming.[11] Under these circumstances, the court's erroneous charge was not harmless, and Baird's conviction must be reversed.

We address Baird's remaining claims of error because they are likely to recur on retrial.

2. During closing argument, the trial court allowed the prosecutor, over defense counsel's objection, to read a portion of the implied consent law to the jury. Baird argues that this violated "[t]he basic rule that counsel may not read law to the jury."

In *Conklin v. State*,[12] the Supreme Court of Georgia held that lawyers may not "supplement the court's charge by reading, in the jury's presence, law that the court is not going to charge."[13] The court noted, however, that lawyers have "every right to refer to applicable law during closing argument (i.e., law that the court is going to give in charge)."[14]

Although the court here did not charge the jury on the implied consent law, that law certainly was applicable. The State cannot admit evidence of a defendant's chemical test results — or of his refusal to take a test — without demonstrating that it met the implied consent notice requirements.[15] To that end, Lundy testified that she had read the implied consent law to Baird from a card that she carried with her, and she then read the words on the card to the jury. The trial court did not abuse its discretion by allowing the prosecutor to repeat a portion of Lundy's testimony, which already was in the record.[16]

3. Baird contends that the trial court improperly allowed the State to impeach defense witness Painter with evidence of her previous DUI conviction.

On direct examination, Painter testified that she did not believe

---

[10] *Nation v. State*, 252 Ga. App. 620, 624 (4) (556 SE2d 196) (2001).

[11] Although proof of a traffic violation is not necessary to show driving impairment, we note that the jury acquitted Baird of failure to maintain lane.

[12] 254 Ga. 558 (331 SE2d 532) (1985).

[13] Id. at 571 (10) (b).

[14] (Citation omitted.) Id. at 570-571.

[15] See *Miller v. State*, 238 Ga. App. 61, 62 (1) (516 SE2d 838) (1999); *State v. Terry*, 236 Ga. App. 248 (511 SE2d 608) (1999).

[16] See *Brown v. State*, 268 Ga. 354, 360 (8) (490 SE2d 75) (1997) ("Since counsel in argument clearly have the right to comment on the evidence, it is not improper for them to repeat what testimony was.") (citation and punctuation omitted).

that Baird was under the influence of alcohol when he left the lake on June 17. On cross-examination, the following exchange occurred:

> PROSECUTOR: Did you think you were under the influence of alcohol?
> PAINTER: I was not. I did not think I was.
> PROSECUTOR: Do you consider yourself qualified to make that kind of determination?
> PAINTER: I mean, I know when I've had too much to drink.
>
> . . .
>
> PROSECUTOR: You wouldn't get behind the wheel if you thought you had too much to drink.
> PAINTER: No.
> PROSECUTOR: You wouldn't drive if you thought you had too much to drink?
> PAINTER: Not now, no, ma'am.

The prosecutor then attempted to impeach Painter with her guilty plea to DUI in 2001. Defense counsel objected and sought a mistrial, arguing that the impeachment was improper because DUI is not a crime of moral turpitude. The court overruled the objection and allowed the impeachment.

The court did not abuse its discretion. The right to a "thorough and sifting cross-examination"[17] of a witness includes the right to impeach the witness by revealing possible biases or prejudices concerning issues in the case.[18] Because Painter had offered her opinion that Baird was not under the influence of alcohol on June 17, the State was entitled to explore her competence to assess whether a person is under the influence of alcohol. Her prior DUI conviction was relevant to that competence.

*Judgment reversed. Blackburn, P. J., and Ellington, J., concur.*

DECIDED MARCH 28, 2003.

*Weaver & Weaver, George W. Weaver, Jeffrey L. Floyd*, for appellant.

*Jason J. Deal, District Attorney, Lindsay H. Messick, Assistant District Attorney*, for appellee.

---

[17] OCGA § 24-9-64.
[18] *Duckworth v. State*, 223 Ga. App. 250, 252 (1) (477 SE2d 336) (1996).