## A04A2268. THE STATE v. ELLISON.
### (611 SE2d 129)

Mikell, Judge.

After being charged with driving under the influence of alcohol in violation of OCGA § 40-6-391 (a) (1) (less safe) and OCGA § 40-6-391 (a) (5) (per se), James Ellison moved to suppress the results of a breath test because the officer lacked probable cause to arrest him and request such a test. After holding an evidentiary hearing in which only the arresting officer testified, the trial court granted Ellison's motion to suppress. The state appeals. We affirm for the reasons set forth below.

1. We must abide by the following three principles when reviewing a trial court's order granting a motion to suppress evidence:

> First, the judge sits as the trier of facts. The trial judge hears the evidence, and his findings based upon conflicting evidence are analogous to the verdict of a jury and should not be disturbed by a reviewing court if there is any evidence to support it. Second, the trial court's decision with regard to questions of fact and credibility must be accepted unless clearly erroneous. Third, the reviewing court must construe the evidence most favorably to the upholding of the trial court's findings and judgment.[1]

Viewed in its proper light, the evidence shows that the arresting officer encountered Ellison at 2:40 a.m. while conducting a roadblock for the purpose of checking driver sobriety. The officer testified that when he approached Ellison and asked for his driver's license, the officer smelled a "strong" odor of alcohol coming from Ellison's breath. The officer also noticed that Ellison's eyes were red, bloodshot, and watery in appearance. Ellison initially denied that he had been drinking. Only after the officer told him that he could smell alcohol on him did Ellison acknowledge, "yes, I had a drink earlier."

---

[1] (Punctuation and footnote omitted.) *State v. Hester,* 268 Ga. App. 501, 502 (602 SE2d 271) (2004).

The officer then asked Ellison to step out of the car; Ellison complied and did not stumble or lose his balance while exiting the car. When the officer asked Ellison to perform field sobriety tests, Ellison refused, explaining, "I've been arrested for DUI before, and I do not think I can do them." The officer testified that this statement led him to believe "that under his previous arrest when he was under the influence of alcohol he couldn't do them. And he believes this time because he's under the influence of alcohol that he can't do them." He admitted that Ellison did not say he could not perform them because he had consumed too much alcohol. The officer further testified that he was confident that Ellison would have failed the field sobriety tests had he performed them.

After Ellison refused to perform the field sobriety tests, the officer placed him under arrest for driving under the influence and read the implied consent warning to him. According to the officer, he arrested Ellison because there was a strong odor of alcohol on his person and breath, his eyes were bloodshot and watery, he admitted to drinking, and he refused to do the field sobriety tests because he did not think he could pass them based on previous DUI arrests. The officer testified that he has observed over 100 people under the influence of alcohol and that in his opinion, Ellison was under the influence of alcohol to the extent he was a less safe driver.

During cross-examination, the officer acknowledged that based on the smell of alcohol alone, he could not determine a person's level of impairment. He did qualify this response by stating: "But with the combination of things, with my training as a DUI task force officer, usually the stronger and more intense the alcohol smell, it is usually sometimes an indication of how much someone's been drinking. And then you have the red and watery eyes also." Defense counsel then established that the officer had not investigated any alternative explanations for Ellison's red eyes such as allergies, being in a smoky place, visual strain, or fatigue. Nonetheless, the officer testified that he did not believe Ellison's eyes were red for any other reason.

After taking the motion under advisement, the trial court ruled as follows:

> The arresting officer lacked probable cause to arrest Defendant for DUI. After properly stopping at a police roadblock, Defendant admitted having consumed alcohol, and the officer smelled alcohol on Defendant's breath. Additionally, Defendant's eyes were red, bloodshot and watery, but the officer conceded that factors other than alcohol could have caused Defendant's eyes to appear as they did. There was no evidence that the alcohol affected Defendant's balance, speech, or other motor skills.

The above evidence shows the presence of alcohol in Defendant's body, but it does not suggest that Defendant was incapable of driving safely. Individual responses to alcohol vary, and the presence of alcohol in a defendant's body, by itself, does not support an inference that the defendant was an impaired driver. *Baird v. State*, 260 Ga. App. 661, 663 [(580 SE2d 650)] (2003). Here, there was insufficient evidence of how the alcohol in Defendant's body would affect Defendant's driving ability, or how the alcohol impaired Defendant, for the officer to conclude that Defendant was a less safe driver.

Additionally, Defendant's refusal to submit to voluntary field sobriety evaluations does not support an inference that Defendant was less safe. There are many reasons why Defendant would refuse such testing. And without having observed some impairment of Defendant's ability to walk, balance, etc., it is not reasonable to infer that Defendant refused field sobriety tests because Defendant was too impaired by alcohol to pass those tests. It is therefore ORDERED that Defendant's Motion to Suppress is GRANTED.

2. The state asserts the trial court should not have granted the motion to suppress because the record shows that the officer had sufficient probable cause to arrest Ellison. Probable cause to arrest for driving under the influence exists where the officer, at the time of the arrest, had knowledge or reasonably trustworthy information sufficient to authorize a prudent person to believe that the defendant "was driving under the influence of alcohol to the extent that it was less safe for him to be driving."[2] "The test of probable cause requires merely a probability — less than a certainty but more than a mere suspicion or possibility."[3]

---

[2] (Citation omitted.) *Cunningham v. State*, 216 Ga. App. 283, 284 (1) (454 SE2d 176) (1995). See also *Watson v. State*, 243 Ga. App. 636, 637 (b) (534 SE2d 93) (2000). We note that the trial court's order seemed to require proof that the defendant was "incapable of driving safely," although the DUI statute requires proof that Ellison was "[u]nder the influence of alcohol to the extent it is less safe for the person to drive." OCGA § 40-6-391 (a) (1). However, the Supreme Court has held that " 'less safe to drive' " and " 'incapable of driving safely' are equivalent standards legally, historically, and semantically." *State v. Kachwalla*, 274 Ga. 886, 887-888 (561 SE2d 403) (2002). Thus, we need not address any inconsistency in our cases regarding probable cause to arrest in a driving under the influence case. See *Malone v. State*, 261 Ga. App. 420, 421 (582 SE2d 561) (2003) ("incapable of driving safely"). Compare *Cunningham*, supra at 284 (1) ("less safe").

[3] (Citation and punctuation omitted.) *Firsanov v. State*, 270 Ga. 873, 875 (3) (513 SE2d 184) (1999).

3. The state contends the following facts provided the officer with sufficient probable cause to arrest Ellison: (1) Ellison exuded a strong odor of alcohol; (2) Ellison's admission that he had been drinking; (3) the officer's opinion, based on his training, experience, and observation of Ellison, that Ellison was under the influence of alcohol to the extent that he was a less safe driver; (4) Ellison's statement that he refused to take field sobriety tests because "I've been arrested for DUI before, and I do not think I can do them"; and (5) the fact that Ellison's eyes were red, bloodshot, and watery.

(a) The state is correct that the facts recited above, if believed by the trial court, would be more than adequate to provide probable cause to arrest. However, the law does not require a trial judge to believe the testimony of a witness or to find probable cause automatically whenever certain words are spoken. To be sure, if the facts are stipulated, or if the critical facts do not depend on the testimony of witnesses who are subject to cross-examination, then the trial judge's application of the law is subject to de novo appellate review.[4] But a "trial court's ruling [on a motion to suppress] frequently involves a mixed question of fact and law."[5] When the outcome of a motion to suppress depends on the credibility of the witnesses or on disputed facts, and the trial court has not committed an error of law, the court's ruling will not be disturbed on appeal.[6] As a reviewing court, we must accept the factual and credibility determinations and inferences drawn by the trier of fact, even if we disagree with them, as long as there is evidence in the record to support the court's findings.

(b) Having set out the proper standard of review, we examine the five factual circumstances listed above. The first two circumstances relied upon by the state, standing alone, would not provide probable cause for Ellison's arrest. We have previously held that evidence which shows *only* that the defendant had alcohol in her body while driving provides insufficient probable cause to arrest for DUI.[7]

---

[4] *Silva v. State*, 278 Ga. 506 (604 SE2d 171) (2004); see also *Vansant v. State*, 264 Ga. 319, 320 (1) (443 SE2d 474) (1994) ("where the evidence is uncontroverted and no question regarding the credibility of witnesses is presented, the trial court's application of the law to undisputed facts is subject to de novo appellate review") (citation omitted).

[5] (Citation omitted.) *Vansant*, supra at 320.

[6] See *State v. Gray*, 267 Ga. App. 753 (600 SE2d 626) (2004).

[7] See *Gray*, supra at 755 (2). Our opinion in *Gray* did *not* change the evidence necessary to show probable cause to arrest a DUI suspect. In *Gray*, we affirmed the trial court's grant of a motion to suppress based on the credibility determinations made by the trial court. Specifically, the trial court in *Gray* determined that evidence of the defendant's unsteadiness, bloodshot eyes, and dazed appearance after a single-car accident was not credible evidence of impairment based on the facts before it. *Gray* should not be interpreted as *requiring* a trial court to make the same credibility determination when it is presented with similar evidence. If the trial court in *Gray* had made a different credibility determination and denied the motion to suppress, we

"[I]mpaired driving ability depends solely upon an individual's response to alcohol. Because individual responses to alcohol vary, the presence of alcohol, in a defendant's body, by itself, does *not* support an inference that the defendant was an impaired driver."[8] "Mere presence of alcohol is not the issue."[9] In a less safe case, "the State must prove that the defendant had impaired driving ability as a result of drinking alcohol."[10]

(c) With regard to the remaining circumstances relied upon by the state, we must examine the credibility determinations and inferences drawn by the trial court. We are "a court of review" and lack jurisdiction to decide disputed issues of fact.[11] Likewise, we cannot draw a different inference from the evidence or make a credibility determination contrary to the one made by the trial court.[12] This is true even if we would have made a different conclusion had the members of this Court been the trial judge.

4. The trial court concluded that it would not accept the officer's opinion that Ellison was a less safe driver based on the information available to the officer. As we cannot second-guess that conclusion, that information must be excluded from our analysis of whether probable cause existed to arrest Ellison. "A police officer may give opinion testimony as to the state of sobriety of a DUI suspect and whether appellant was under the influence to the extent it made him less safe to drive."[13] However, the trier of fact is not bound by this opinion, even if it is uncontradicted.[14]

5. The trial court also declined to infer from Ellison's refusal to perform field sobriety tests that he did so because he was too impaired by alcohol to pass the tests, despite the statement made by Ellison at the time of his refusal. Ellison's statement was ambiguous as to *why* he thought he could not perform the field sobriety tests and did not *require* the inference that it was because he thought he was too

---

would have affirmed as well. See *State v. Burke*, 230 Ga. App. 392, 393-394 (496 SE2d 755) (1998).

[8] (Citation, punctuation and footnote omitted; emphasis in original.) *Baird*, supra at 663 (1).

[9] (Punctuation and footnote omitted.) *Ricks v. State*, 255 Ga. App. 188, 190 (1) (564 SE2d 793) (2002).

[10] (Footnote omitted.) *Baird*, supra.

[11] Ga. Const. 1983, Art. VI, Sec. V, Par. III. See also *Jones v. Smith*, 83 Ga. App. 798, 800 (1) (65 SE2d 188) (1951).

[12] See *Hester*, supra.

[13] *Lewis v. State*, 214 Ga. App. 830, 832 (1) (449 SE2d 535) (1994).

[14] See *Zhou v. LaGrange Academy*, 266 Ga. App. 445, 450 (1) (597 SE2d 522) (2004) (trier of fact not required to believe opinion evidence whether expert or lay); *State v. Mixon*, 251 Ga. App. 168, 170 (554 SE2d 196) (2001); Suggested Pattern Jury Instruction 1.31.30 (February 2003) ("You are not required to accept the opinion testimony of any witness, expert or otherwise.").

impaired by alcohol to pass them. While we might have drawn a different inference from this evidence, we cannot second-guess the trial court and draw a different inference on appeal. *State v. Hester*, 268 Ga. App. 501, 502 (602 SE2d 271) (2004). As an appellate court for the correction of legal errors, we must draw all reasonably permissible inferences from the evidence to support the trial court's ruling.[15]

6. The final circumstance the state relies on to show probable cause is that the officer observed that Ellison's eyes were red, bloodshot, and watery. In this regard, the officer testified as follows:

Q. And, in fact, in this situation his eyes were red and watery?

A. Yes, sir.

Q. And what time of night — day or night was this?

A. Around 2:40 in the morning, sir.

Q. Okay. And I think just common sense tells us there's many reasons why someone's eyes could be glassy, bloodshot, watery absent alcohol?

A. In the line of nature of the work I've done and people I came in contact with at nighttime, I've never had anybody's eyes that was red like his was and the odor of alcohol that wasn't under the influence of alcohol.

Q. Okay. So if allergies came into play, that wouldn't cause them to look that way?

A. I have allergies, and my eyes are never red, sir.

Q. How about did you ask him if he was in a smoky establishment?

A. No, sir. . . .

Q. Did you ask him if he was just tired?

A. No, sir.

Q. Did you ever say: Mr. Ellison, your eyes are red. I'm kind of concerned. Do you have a reason why your eyes are so red?

A. No, sir. He was very aware that it was a DUI investigation.

Q. Okay. But you never asked him?

A. No, sir.

Q. But it's possible that his eyes could have been red for another reason?

A. During my investigation, just looking for the presence of alcohol, at that time I would say no.

---

[15] *State v. Corley*, 201 Ga. App. 320, 322 (411 SE2d 324) (1991).

Q. You would say no?
A. Yes, sir.
Q. And you'd never met him before?
A. That's correct.
Q. And you don't know if his eyes are always red or bloodshot?
A. That's correct.
Q. So, again, there's no other reasonable explanation why somebody's eyes could be red?
A. In the course of a DUI investigation usually no.

We have previously found that bloodshot and watery eyes, as opposed to the mere presence of alcohol, can support a finding of impairment.[16] However, such evidence does not *require* a finding of impairment.[17]

The trial court inferred from the officer's testimony that he "conceded that factors other than alcohol could have caused Defendant's eyes to appear as they did." That inference was fairly drawn from the officer's repeated refusal to consider any other contributing factor. In any event, the "[c]redibility of witnesses and the weight to be given their testimony is a decision-making power that lies solely with the trier of fact. The trier of fact is not obligated to believe a witness *even if the testimony is uncontradicted* and may accept or reject any portion of the testimony."[18] We cannot, and will not, usurp the authority of the trial judge to consider such factors as demeanor and other credibility-related evidence in reaching its decision. In the case at bar, the trial court rejected the officer's professed belief as to the cause of the defendant's bloodshot, watery eyes, which the trial court was authorized to do even in the absence of contradicting evidence.[19] We reiterate that we are a court for the correction of errors of law and cannot draw a different inference from the evidence or make a credibility determination contrary to the one made by the trial court.[20]

*Judgment affirmed. Blackburn, P. J., and Barnes, J., concur.*

---

[16] See *State v. Batty*, 259 Ga. App. 431, 432 (577 SE2d 98) (2003); *Gray*, supra; *Burke*, supra at 394; *Temples v. State*, 228 Ga. App. 228, 231 (491 SE2d 444) (1997).

[17] See *Clay v. State*, 193 Ga. App. 377, 379 (2) (387 SE2d 644) (1989) (insufficient evidence to support DUI conviction where the defendant's eyes "normally appeared red and bloodshot"); *Gray*, supra (upholding trial court's determination that the defendant's unsteadiness, bloodshot eyes, and dazed appearance were not credible evidence of impairment because they may have been caused by the accident and the release of the airbags).

[18] (Emphasis supplied.) *Tate v. State*, 264 Ga. 53, 56 (3) (440 SE2d 646) (1994).

[19] Id.

[20] See *Hester*, supra.

DECIDED MARCH 3, 2005.

*Gerald N. Blaney, Solicitor-General, Jeffrey P. Kwiatkowski, Gary S. Vey, Rosanna M. Szabo, Assistant Solicitors-General*, for appellant.

*Steven M. Ward, Jeremy E. Citron*, for appellee.