### A05A0202. DROGAN v. THE STATE.
(613 SE2d 195)

ANDREWS, Presiding Judge.

Adam Drogan, convicted by a jury of DUI (less safe), running a red light, and not using his headlights, appeals, challenging the sufficiency of the evidence, portions of the charge to the jury, and limitation of his cross-examination. Finding no harmful error, we affirm.

1. We consider first Drogan's fourth and fifth enumerations of error in which he contends that the evidence was insufficient because the State did not prove Drogan was driving the car or that he was incapable of driving safely.

On appeal from a criminal conviction, the evidence is viewed in a light most favorable to the verdict. We do not weigh the evidence or determine witness credibility but only determine whether the evidence is sufficient under the standard of *Jackson v. Virginia,* 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). The verdict must be upheld if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Stone v. State,* 248 Ga. App. 190 (546 SE2d 787) (2001).

So viewed, the evidence here was that Athens-Clarke County Police Officer Anderson had been assisting another officer investigating an accident during the early morning hours of the midnight shift on July 21, 2003. The two cars involved in the accident at the intersection of Pulaski and Hancock streets had been removed from the scene and Anderson, in uniform, was walking back to his marked patrol car. As he approached his car, Anderson noticed a car driving north on Pulaski toward him with no headlights on. Anderson stepped out into the street and flashed his flashlight at the car, but the driver did not seem to respond. Anderson then stepped into the path of the car in the inside lane and held his hand up, motioning for the car to stop. Instead, the car swerved around him into the oncoming traffic lanes and continued on. As the car went through the intersection of Pulaski and Hancock, the driver ran a red light. Anderson pursued the car with his blue lights activated and caught up just as they approached Prince Avenue. The car made a left turn onto Prince Avenue, failing to yield to an oncoming vehicle, which braked abruptly.

Anderson went around this vehicle and activated his siren and followed until the car eventually stopped at Prince and Barber. Because Anderson worked at night in a residential neighborhood, it was unusual for him to activate his siren.

Anderson used the loudspeaker on his patrol car and told the driver not to move the car another inch. He then got out of his patrol car and approached the driver. At trial, when asked who the driver was, Anderson responded, "Mr. Drogan." Also, when asked if he had occasion to come into contact with the "Defendant in this case," Anderson said, "yes." As he talked to Drogan following the stop, Anderson could smell the odor of alcohol coming from inside Drogan's car. Drogan produced his driver's license and proof of insurance upon Anderson's request. When Anderson asked Drogan how much he had to drink, Drogan initially did not answer, but turned away from the officer. Anderson asked him twice more, but Drogan continued to turn away from him. Anderson asked Drogan to go to the rear of his car with him, which he did. Anderson, face to face with Drogan, could smell alcohol more strongly on Drogan and asked him again how much he had to drink. Drogan turned away, but said, "not too much."

Anderson asked Drogan to consent to take voluntary field sobriety tests, but Drogan refused. At this point, Anderson formed the opinion that Drogan was less safe to drive due to alcohol, placed him in custody, and read the implied consent notice. Drogan refused to take the required State breath test.

(a) Regarding his argument that he was not identified, we note that no objection was voiced to the above referenced identifications, nor was failure to prove the driver was Drogan one of the grounds in his motion for directed verdict.

> "Failure to object to the in-court identification at trial forecloses appellate review of the matter. [Cit.]" *Doby v. State*, 173 Ga. App. 348, 350 (5) (326 SE2d 506) (1985). See also *Reynolds v. State*, 168 Ga. App. 555, 556 (2) (309 SE2d 867) (1983); *May v. State*, 159 Ga. App. 565, 566 (2) (284 SE2d 70) (1981); *Respess v. State*, 145 Ga. App. 570 (2) (244 SE2d 251) (1978).

*Hall v. State*, 180 Ga. App. 881, 882 (2) (350 SE2d 801) (1986). See also *Overton v. State*, 270 Ga. App. 285, 289 (3) (606 SE2d 306) (2004); *Curry v. State*, 217 Ga. App. 623, 626 (2) (458 SE2d 385) (1995).

(b) A driver who operates a vehicle while under the influence of alcohol to the extent that it is less safe for him to drive is guilty of DUI under OCGA § 40-6-391 (a) (1). "[T]here is no requirement that the driver actually commit an unsafe act to violate OCGA § 40-6-391 (a) (1)." (Footnote omitted.) *Susman v. State*, 256 Ga. App. 94, 95-96 (2)

(567 SE2d 736) (2002). The State need only prove that alcohol impaired the defendant's driving ability. Id. at 96 (2). Methods of proof may include evidence of (i) erratic driving behavior, (ii) refusal to take field sobriety tests and the breath or blood test, and (iii) the officer's own observations (such as smelling alcohol and observing strange behavior) and resulting opinion that the alcohol made it less safe for the defendant to drive. *Weldon v. State*, 262 Ga. App. 854, 855 (3) (586 SE2d 741) (2003); *Fuller v. State*, 256 Ga. App. 840, 842-843 (2) (570 SE2d 43) (2002); see *Kelly v. State*, 242 Ga. App. 30, 33-34 (5) (528 SE2d 812) (2000); *Lucas v. State*, 234 Ga. App. 534, 535 (1) (507 SE2d 253) (1998).

Based on *Baird v. State*, 260 Ga. App. 661 (580 SE2d 650) (2003); *State v. Batty*, 259 Ga. App. 431 (577 SE2d 98) (2003); *Ricks v. State*, 255 Ga. App. 188 (564 SE2d 793) (2002); and *Davis v. State*, 206 Ga. App. 647 (426 SE2d 267) (1992), Drogan argues that the evidence was legally insufficient to show that he had impaired driving ability as a result of alcohol consumption.

We find that *Davis v. State*, supra, is factually distinguishable from this case. There, the officer smelled an odor of alcohol in the defendant's car but could not pinpoint the source and could not affirmatively determine whether the driver or his three passengers had been drinking. Further, a blood sample taken three hours after the accident tested negative for alcohol and drugs. Id. at 647-648. Here there were no other passengers to which the odor could be attributed and Drogan was unwilling to submit to testing.

In *Baird v. State*, the analysis did not address the insufficiency of proof of "less safe," but rather erroneous jury instructions which required reversal. *State v. Batty*, supra, involved review of the trial court's grant of a motion to suppress where the trial court made a specific finding that the arresting officer lacked credibility regarding an observed traffic violation. Id. at 432.

Finally, in *Ricks v. State*, the arresting officer acknowledged that, except for the fact that Ricks was under 21 and was drinking, there was nothing he had done to indicate to the officer that he was impaired by alcohol to the extent that he was a less safe driver. Id. at 189.

On the record before us, we believe there was sufficient evidence from which a reasonable trier of fact could find Drogan had consumed alcohol to the extent that he was a less safe driver. *Long v. State*, 271 Ga. App. 565 (610 SE2d 74) (2005); *Weldon v. State*, supra; *Fuller*, supra at 842 (2).

2. Based on *Burchette v. State*, 278 Ga. 1 (596 SE2d 162) (2004), Drogan argues that the trial court's *Allen* charge to the jury, after

they had deliberated one hour and forty-five minutes and had asked what to do if they could not arrive at a verdict, was reversible error.

First, we note that Drogan's trial was held on April 5 and 7, 2004, prior to the decision in *Burchette* on May 3, 2004. Second, although the language indicating that the case "must be decided by some jury" was disapproved in *Burchette,* the mere use of that language was not sufficient for reversal. Instead, it must be determined whether the instruction was so coercive as to cause a juror to abandon an honest conviction for reasons other than those based on the trial and arguments of other jurors. *Burchette,* supra at 3. There, the Supreme Court determined that the objected-to language "constituted but one small portion of an otherwise balanced and fair *Allen* charge, it did not render the charge impermissibly coercive." Id. The length of time the jury deliberated before and after the giving of this charge was one of the factors considered by the Supreme Court in determining whether it had been coercive.

Although Drogan argues here that the verdict was returned shortly after the giving of the charge, nothing in the record before us indicates the length of time between the giving of the charge and the return of the verdict. *Cooper v. State,* 235 Ga. App. 66, 67 (1) (508 SE2d 447) (1998) (factual representations in briefs not considered if facts do not appear on the record); *Whitt v. State,* 215 Ga. App. 704, 706 (1) (452 SE2d 125) (1994) (same). Likewise, nothing in the record supports the statement in Drogan's brief regarding an unsolicited call from a juror. Therefore, we will not consider these arguments.

A review of the charge given here reflects that, as in *Burchette,* the disapproved phrase was only a small portion of an otherwise balanced and fair *Allen* charge and no showing has been made regarding coercion. Also, the jury was polled following the verdict, and none indicated any disagreement with it. There was no error. *Clark v. State,* 271 Ga. App. 534, 538 (4) (610 SE2d 165) (2005); *Nowill v. State,* 271 Ga. App. 254, 258 (3) (609 SE2d 188) (2005); *Weeks v. State,* 268 Ga. App. 886, 888 (5) (602 SE2d 882) (2004).

3. Drogan argues that the trial court erred in failing to give his Request to Charge No. 1[1] based on *State v. Kachwalla,* 274 Ga. 886 (561 SE2d 403) (2002), and that the charge, as given, was an improper comment upon the evidence.

> " 'A requested charge needs to be given only where it embraces a correct and complete principle of law adjusted to the

---

[1] "I charge you that in order to convict Defendant for [DUI] to the extent that he was *less safe to drive,* the State must prove that Defendant was under the influence of alcohol to a degree which *rendered him incapable of safely driving.*" (Emphasis supplied.)

facts and which is not otherwise included in the general instructions given.' (Citations and punctuation omitted.) *Pace v. State*, 201 Ga. App. 475, 476 (411 SE2d 361) (1991)."

*Bess v. State*, 207 Ga. App. 295, 296 (3) (427 SE2d 813) (1993). See *Fancher v. State*, 190 Ga. App. 438, 440 (2) (378 SE2d 923) (1989).

After reviewing the charge submitted by Drogan, we have determined that it does not differ in substance from the charge given. We therefore find no error in the court's refusal to give the requested charge. Drogan's reliance on *State v. Kachwalla*, supra, for his argument that the charge was required is misplaced. As recently held by this Court,

> the difference in the language used in a jury charge for a prescription drug DUI case from that used in an alcohol DUI case stems from the language in OCGA § 40-6-391. OCGA § 40-6-391 (a) (1) makes it illegal for a person to drive a car while under the influence of alcohol to the extent that it makes it "less safe" for the person to drive, while OCGA § 40-6-391 (b) makes it illegal for a person to drive a car while under the influence of a prescribed drug if the person is "rendered incapable of driving safely" as a result of the drug. This issue has previously been addressed by Georgia courts. The court in *State v. Kachwalla*, [supra], held that the two are "equivalent standards" and therefore one charged with DUI under the "less safe" standard, as opposed to the "rendered incapable of driving safely" standard, has not suffered unconstitutional disparate treatment. Thus, the trial court did not violate the Equal Protection Clause when it gave the "less safe" jury charge *nor was it compelled to give the "rendered incapable of driving safely" jury charge when it was requested by [Drogan]*. See *Jones v. State*, 168 Ga. App. 106 (1) (308 SE2d 209) (1983).

(Emphasis supplied.) *Johnson v. State*, 268 Ga. App. 426, 428 (2) (602 SE2d 177) (2004).

Further, the charge as given was not an improper comment upon the evidence by the trial court. See *Harris v. State*, 118 Ga. App. 848 (166 SE2d 94) (1968); *Huff v. State*, 113 Ga. App. 257 (147 SE2d 840) (1966).

4. Drogan's third enumeration is that the trial court improperly limited his cross-examination of arresting officer Anderson.

During his cross-examination of the officer, Drogan began questioning him about other DUI arrests he had made of other defendants and whether certain manifestations, such as glassy or bloodshot eyes,

were present in a large percentage of them. The State's objection was sustained and defense counsel indicated he wanted to go into the officer's experience and training. The trial court specifically stated that counsel could go into the officer's experience and training, but "how as to other people perform doesn't have anything to do with the way your client performed." After discussing the issue further, defense counsel stated, "I'll move on to his training, Your Honor, and just his training alone."

"A party cannot ignore what he thinks to be error, take his chance on a favorable verdict, and complain on appeal." (Citations and punctuation omitted.) *West v. State*, 224 Ga. App. 190, 191 (2) (480 SE2d 238) (1997). See also *Boatright v. State*, 192 Ga. App. 112, 116 (5) (385 SE2d 298) (1989).

Even considering the merits of the claim, however, we find no abuse of discretion. Although a defendant is entitled to a thorough and sifting cross-examination of the State's witnesses, OCGA § 24-9-64,

[w]ithin carefully protected legal parameters, the scope of cross-examination lies within the sound discretion of the trial court; this discretion will not be disturbed by an appellate court absent manifest abuse. Basically, the confrontation clause guarantees an opportunity for effective cross-examination, not cross-examination that is effective in whatever way and to whatever extent[ ] the defense might wish.

(Citation and punctuation omitted.) *State v. Battaglia*, 221 Ga. App. 283, 284-285 (1) (470 SE2d 755) (1996).

*Judgment affirmed. Phipps and Mikell, JJ., concur.*

DECIDED APRIL 6, 2005 — ▮▮▮▮▮▮

Head, Thomas, Webb & Willis, Gregory A. Willis, for appellant.
*Ralph W. Powell, Jr., Solicitor-General, Diana Slocumb, Assistant Solicitor-General*, for appellee.

