A01A1420. NEL v. THE STATE.
(557 SE2d 44)

BLACKBURN, Chief Judge.

A Forsyth County jury found Jan G. Nel guilty as charged of a single count of misdemeanor cruelty to animals, which charge arose when, at approximately 10:30 p.m. on October 16, 1999, Nel suspected that a group of teenage boys were raccoon hunting on his property with their dogs; he went into the woods in search of them with a 223 Thompson Contender pistol, saw a hunting dog running past, followed the dog into the woods, and shot it. Now, on appeal, Nel raises 30 enumerations of error that he contends require reversal of the jury's verdict. Upon review, we find Nel's contentions meritless and affirm his conviction.

1. Attorney James E. Hardy II was specially appointed as a solicitor-general to try this case on behalf of the State because the Solicitor-General of Forsyth County ("SG") had a conflict of interest that

prevented her participation. In his first and second enumerations of error, Nel contends that such appointment rendered the jury's verdict null and void because: (a) the SG's conflict of interest was not disclosed to him, and thus the trial court failed to hold a hearing on the SG's disqualification, and (b) attorney Hardy did not qualify for appointment because he practices criminal defense law in the State Court of Forsyth County in violation of OCGA § 15-18-63 (c).

(a) Nel fails to provide any legal basis for the notion that, when seeking disqualification and appointment of a special prosecutor, the SG's conflict of interest must be disclosed to *him*. Certainly the statute does not require it. OCGA § 15-18-65. Indeed, it appears from the context of the arguments contained in the instant enumeration of error that Nel supposes success would have been more likely if he had tried the case against the SG instead of Hardy. However, Nel does not have a substantive right to have his case tried by a specific prosecutor so as to make notice necessary in order to oppose the SG's disqualification. Nel does not claim any procedural error in the appointment of Hardy, nor does he claim that the SG's conflict was feigned.[1] Nel has not alleged — and we cannot perceive — any prejudice to him because the SG recognized a legitimate conflict, disqualified herself, and a special prosecutor was duly appointed. Accordingly, we find no basis for the trial court to hold a hearing on such subject.

(b) Contrary to Nel's contention, OCGA § 15-18-63 is inapplicable in the instant case as Hardy was not a "part-time solicitor-general," but was a solicitor-general pro tempore specially appointed specifically for the instant case. OCGA § 15-18-65 (a).

2. In enumerations of error 3 and 4, Nel claims reversible error in (a) the State's failure to produce papers in the possession of a firearms expert; (b) the State's failure to produce the collar removed from the dog; and (c) the trial court's failure to mark the dog collar as an exhibit for this Court on appeal. We find no error.

(a) The State had an open file policy. Defense counsel reviewed the State's file and declared it "basically an open file." The papers about which Nel now complains were in the possession of the firearms expert and were not related specifically to this case; instead, they apparently contained general facts relating to the Thompson Contender brand of pistol. Nel was given copies of the papers and permitted to review them prior to cross-examination of the expert. He had no objection to this procedure. Further, the papers were not admitted into evidence. Under these circumstances, this claim of er-

---

[1] Nel concedes that there is evidence in the record to support disqualification in that the mother of the boy who owned the dog "was a nurse at Northside Hospital for one of Solicitor Abernathy's babies which may have constituted a conflict for the solicitor to handle the case."

ror is waived. *Hunter v. State.*[2]

(b) Photographs showed that, at the time of its death, the dog was wearing a purple collar with identifying tags. This fact went undisputed. The State did not introduce the collar, and it was put before the jury only after the close of the State's case, in rebuttal to Nel's testimony. Pretermitting whether pretrial production is required for rebuttal evidence, we find no prejudice to Nel in the late production of the collar when its existence on the dog's neck at the time of death was factually established, photographically documented, and undisputed. "Harm as well as error must be affirmatively shown by the record to obtain reversal." *Evans v. State.*[3]

(c) Based on the above disposition, we find no error in the trial court's refusal to have the dog collar marked as an exhibit and sent to this Court for appellate purposes.

3. We likewise find no error in the trial court's refusal to grant a mistrial based on the prosecutor's question, "How many dogs have you shot in South Africa?" No motion for mistrial was made at the time of objection. "A motion for mistrial not made at the time the testimony objected to is given is not timely and will be considered as waived because of the delay in making it." *Thaxton v. State.*[4] Further, such question went specifically to Nel's representations that "they had the right to shoot wild dogs in South Africa where he lived at before."

4. In enumerations of error 6 and 7, Nel complains about an episode of alleged prosecutorial misconduct when the prosecutor "paraded an exhibit, the firearm, throughout the Courtroom, dry fired it in the Courtroom, and generally made it the center of attention." Thereafter, during defense counsel's direct examination of Nel about the firearm, the prosecutor apparently embarrassed both defense counsel and Nel by asking, "Pardon me, Your Honor. Would the Court have him unbreach that weapon, please?" Defense counsel found such question to be "some insinuation that he's [Nel] been dangerous here."

We have reviewed the lengthy transcript of this misdemeanor trial thoroughly. The record reveals more than a little acrimony. Meritless claims of misconduct were repeatedly leveled by both prosecutor and defense counsel for various perceived slights. In fact, a large part of the four-day trial was taken up with attorney wrangling. And we specially find that the trial judge showed great patience as both parties carried on — and on.

The comment by the prosecutor about which Nel complains,

[2] *Hunter v. State*, 202 Ga. App. 195, 197 (413 SE2d 526) (1991).
[3] *Evans v. State*, 233 Ga. App. 879, 880 (2) (506 SE2d 169) (1998).
[4] *Thaxton v. State*, 260 Ga. 141, 143 (5) (390 SE2d 841) (1990).

while perhaps unwarranted, was not a personal "attack" as Nel characterizes it by brief. In fact, it is not out of the realm of possibility that defense counsel's objection brought more unwanted jury attention to the prosecutor's question than simply unbreaching the weapon would have done. And we note that the bulk of Nel's complaint involves discussion that was held outside the presence of the jury. Prejudice based on the single complained-of question referenced above is completely speculative. We will not reverse on such meritless ground.

Along these same lines, we also reject as factually and legally meritless Nel's claims of prosecutorial misconduct as follows: enumeration of error 9 (alleging a dual claim that the prosecutor "withheld evidence," which evidence Nel fails to identify to this Court, and that the prosecutor "duped the court into violating the freedom of the press and the First Amendment" when, at the prosecutor's request, the trial court simply ordered that a local paper containing a favorable article about defense counsel be removed from the courthouse); enumeration of error 10 (alleging that the prosecutor made an improper comment on Nel's "silence" when Nel was not silent but made a statement to a deputy, and to which alleged improper comment Nel objected at trial only on the basis of "relevance"); enumeration of error 11 (alleging that the prosecutor failed to reveal a "deal" with the victim that Nel assumes exists only by virtue of the State's failure to prosecute the teenage victim for trespassing on Nel's property in order to find his dog); and, finally, enumeration of error 12 (alleging that the prosecutor improperly asked two hypothetical questions not based on facts in evidence, when one complained-of question was based on facts within the personal knowledge that the witness obtained on the scene and the other complained-of question was based on tendered photographic exhibits and testimony from an eyewitness as to the direction the dog was traveling).

5. In enumeration of error 8, Nel complains that the trial court failed to declare him an expert witness on the subject of firearms.

> It is a matter within the sound discretion of the trial judge as to whether a witness has such learning and experience in a particular art, science or profession as to entitle him to be deemed prima facie an expert. Thus, the trial court's decision as to a witness' qualifications to testify as an expert will be reversed only if that discretion is abused.

(Punctuation and footnotes omitted.) *Yount v. State.*[5] The voir dire of Nel's qualifications showed him to be familiar with the weapons he

---

[5] *Yount v. State*, 249 Ga. App. 563, 564-565 (1) (548 SE2d 674) (2001).

owned, including the Thompson Contender he used to shoot the dog. But familiarity with one's own weapons does not necessarily render one a firearms "expert." Accordingly, under the facts of record, we find no abuse of the trial court's discretion in refusing to recognize Nel as an expert in firearms.

6. Next, in two separate enumerations of error, Nel challenges the trial court's denial of his motions for directed verdict. A trial court is authorized to grant a motion for directed verdict only when all of the reasonable deductions and inferences arising from the undisputed evidence demand a finding that the accused is not guilty. OCGA § 17-9-1 (a).

Here, it was undisputed that Nel shot the dog. However, he claimed justification and testified that the dog "came right at" him while he was standing beside his car, thus requiring him to shoot the dog in order to avoid injury. On the other hand, an eyewitness who was sitting in Nel's car at the time of the incident testified that the dog "ran down the roadway" into the woods and, thereafter, the witness "lost sight" of both the dog and Nel prior to hearing the fatal shot. This evidence raises the inference that Nel followed the dog in order to shoot it. While there was additional evidence in support of the State's case, the above-referenced evidence, alone, presents a question for jury resolution as to whether the shooting was justified as self-defense. Accordingly, under enumerations of error 13 and 14, the trial court correctly denied Nel's motions for a directed verdict of acquittal.

7. The remaining 15 enumerations of error concern the trial court's charge to the jury. In that regard, the trial court asked for objections at the conclusion of his jury charge. Defense counsel moved to the podium and articulated several specific objections to the charge, at the end of which he stated "that is my exceptions to the charge." Defense counsel did not reserve his right to assert additional objections. "[D]efense counsel may object to such portions of jury instructions as are perceived at trial to be error and may also reserve the right to raise additional objections on motion for new trial or on appeal." *McCoy v. State.*[6] In order to avoid waiver, if the trial court inquires if there are objections to the charge, counsel must state his objections and/or follow the procedure of reserving the right to object on motion for new trial or on appeal. Id.; *Jackson v. State.*[7] Nel's failure to reserve the right to raise additional objections to the jury charge waives those claims of error not specifically raised at trial.

That said, we have carefully reviewed Nel's specific exceptions to

[6] *McCoy v. State*, 262 Ga. 699, 701 (2) (425 SE2d 646) (1993).
[7] *Jackson v. State*, 246 Ga. 459, 460 (271 SE2d 855) (1980).

the charge as alleged at trial and can detect no error. The following charges of the trial court about which Nel complains are correct statements of law: justification as an affirmative defense that the State must disprove; the jury's duty to apply the law to the facts; incriminating statements; application of *Miranda*;[8] reasonable fears provoking use of force; shooting a dog in defense of self; and that malice, wilfulness, and intent are not elements of cruelty to animals. See generally *Porter v. State*;[9] *Moore v. State*;[10] *Morgan v. State*;[11] *Readd v. State*;[12] *Cox v. State.*[13]

Further, the trial court correctly refused to charge the jury on intent, mere suspicion/conjecture, misapprehension of a fact, lack of negative inference from a defendant's failure to testify, and the Forsyth County ordinance regarding the proper handling of hunting dogs. Such charges were either irrelevant to the legal issues being tried, were not tailored to the evidence, or were factually inapplicable to a case wherein the defendant testified. "A trial judge in a criminal case is required to deliver a charge tailored to the indictment and adjusted to the evidence." *Freeman v. State.*[14]

Finally, we reject Nel's claim that the trial court erred by failing to charge the jury on the principle of jury nullification. Nullification may be appropriate as a limited topic for closing argument. See *Morrison v. State.*[15] It is not error, however, to refuse a jury instruction on such principle. *Andrews v. State.*[16] While "the jury does possess a de facto power of nullification, i.e., a power to acquit the defendant regardless of the strength of the evidence against him, it nonetheless is true that if the evidence proves the defendant guilty beyond a reasonable doubt it is the jury's duty to convict." (Citation and punctuation omitted.) *Miller v. State*,[17] overruled on other grounds, *Woodard v. State*;[18] see *Noggle v. State.*[19]

*Judgment affirmed. Pope, P. J., and Mikell, J., concur.*

---

[8] *Miranda v. Arizona*, 384 U. S. 436 (86 SC 1602, 16 LE2d 694) (1966).

[9] *Porter v. State*, 272 Ga. 533, 534 (3) (531 SE2d 97) (2000).

[10] *Moore v. State*, 228 Ga. 662, 666 (6) (187 SE2d 277) (1972).

[11] *Morgan v. State*, 271 Ga. 885, 886 (4) (525 SE2d 691) (2000).

[12] *Readd v. State*, 164 Ga. App. 97, 99 (296 SE2d 402) (1982).

[13] *Cox v. State*, 216 Ga. App. 86 (1) (453 SE2d 471) (1995).

[14] *Freeman v. State*, 194 Ga. App. 905, 906 (4) (392 SE2d 330) (1990).

[15] *Morrison v. State*, 272 Ga. 129, 130 (3) (526 SE2d 336) (2000).

[16] *Andrews v. State*, 222 Ga. App. 129, 130 (473 SE2d 247) (1996).

[17] *Miller v. State*, 260 Ga. 191, 196 (13) (391 SE2d 642) (1990).

[18] *Woodard v. State*, 269 Ga. 317, 319-320 (496 SE2d 896) (1998).

[19] *Noggle v. State*, 256 Ga. 383, 385 (2) (349 SE2d 175) (1986).

DECIDED NOVEMBER 20, 2001 —
RECONSIDERATION DENIED DECEMBER 4, 2001 — 

*McCrimmon & McCrimmon, Edward W. McCrimmon, Lisa L. McCrimmon*, for appellant.

*Leslie C. Abernathy, Solicitor-General*, for appellee.