A04A0800. JOHNSON v. THE STATE.
(602 SE2d 177)

ANDREWS, Presiding Judge.

Randy Scott Johnson appeals after a jury convicted him of DUI, Less Safe under OCGA § 40-6-391 (a) (1), and driving with no license. Johnson argues that the trial court erred by refusing to grant a mistrial after the prosecutor's opening statement and failing to give the jury instruction that he requested. Additionally, Johnson argues that the trial court erred by admitting evidence of his refusal to submit to alco-sensor screening without first establishing a foundation for its admissibility and for denying his motion to suppress as to the initial search of Johnson. After reviewing the record, we conclude that there was no reversible error and affirm.

The evidence at trial was as follows. On January 26, 2003, the Cherokee County Sheriff's Department was called to Johnson's house by his ex-wife to check on their children. Deputy Shinall of the Cherokee County Sheriff's Department arrived at the house at midnight and was informed by one of the children that Johnson was at a Super Bowl party. The children, three girls under the age of 13, were at home alone and Johnson's ex-wife indicated that he was supposed to be at home supervising them.

Johnson arrived home at 1:00 a.m. and Deputy Shinall approached the car and asked him to get out of the car. After refusing at first, Johnson then got out of the car with difficulty, having to use the door to balance himself. Johnson also informed Deputy Shinall that

he did not have a Georgia driver's license. Deputy Shinall testified that an odor of alcohol was emanating from Johnson and that he had slurred speech and red eyes.

Johnson refused a request to take an alco-sensor test and then admitted to having consumed two beers prior to the Super Bowl game. Deputy Shinall then read the *Miranda* warnings and requested that Johnson submit to a field sobriety evaluation. Johnson declined and Deputy Shinall placed him under arrest. Subsequently, Deputy Shinall read the implied consent warnings and asked Johnson to submit to a State-administered chemical breath test, which he refused to do.

1. In his first enumeration of error, Johnson argues that the trial court erred by declining to grant a mistrial after the prosecutor's opening statement.

In his opening statement, the prosecutor informed the jury that "for various legal reasons[,] we will not be talking about field sobriety tests." Johnson argues that this is an improper reference to his refusal to take the field sobriety tests. The trial court suppressed evidence of his refusal because Johnson refused the tests after receiving his *Miranda* warnings. Johnson argues that the implication of this statement is that the prosecutor had incriminating evidence that could not be shown to the jury for legal reasons and that the trial court should have granted a mistrial following the prosecutor's remarks.

Johnson relies on *Rodriguez v. State*, 184 Ga. App. 819, 820-821 (363 SE2d 23) (1987), which discussed the improper use of hearsay evidence in the opening statement. But, as Johnson acknowledges in his brief, the prosecutor's reference to inadmissible hearsay evidence in his opening statement did not lead to a mistrial in that case. Id. Additionally, even assuming that a reference to hearsay evidence is necessarily analogous to a reference to suppressed evidence, the prosecutor's reference to the inadmissible hearsay in that case was of a highly specific nature and concerned an allegation of criminal activity. Id. This is distinguishable from the present case where the prosecutor made no similar allegation of wrongdoing by the defendant and simply informed the jury that an expected part of DUI cases would not be heard.

The standard of review for the trial court's refusal to grant a mistrial is abuse of discretion. *Underwood v. State*, 218 Ga. App. 530 (462 SE2d 434) (1995). Additionally, as the Supreme Court in *Sims v. State*, 251 Ga. 877, 879 (3) (311 SE2d 161) (1984) stated, "the trial court has a sound discretion to control the content of the opening statement of either party, particularly with regard to matters of questionable admissibility." Given this discretion, the trial court did not act improperly in allowing the prosecutor to inform the jury that

evidence of field sobriety tests would not be heard. There was nothing facially prejudicial in his remark: the prosecutor did not refer to Johnson's refusal to take the tests, nor did he suggest that incriminating evidence related to the tests existed. Because DUI cases will generally include evidence of field sobriety tests, Johnson has failed to demonstrate why it would be an abuse of the trial court's discretion to permit the prosecutor to apprise the jury of the absence of this expected element. Because Johnson has failed to demonstrate that the trial court abused its discretion in allowing the prosecutor's remark in the opening statement to stand, he has also failed to demonstrate that the trial court abused its discretion in refusing to grant a mistrial.

2. In his second enumeration, Johnson argues that the trial court violated the Equal Protection Clause when it declined to give the jury charge that he requested. Johnson's requested jury charge would have allowed the jury to convict if it felt that Johnson was "rendered incapable of driving safely" due to ingestion of alcohol. Instead, the trial court instructed the jury that it could convict if it felt that Johnson was under the influence of alcohol to the extent that it was "less safe" for him to drive. In his brief, Johnson acknowledges that the standards in the two jury charges are legally equivalent, but he alleges it is unfair and violative of the Equal Protection Clause to give the "incapable of driving safely" jury charge in prescription drug DUI cases while giving the "less safe" jury charge in alcohol DUI cases.

As Johnson noted in his brief, the difference in the language used in a jury charge for a prescription drug DUI case from that used in an alcohol DUI case stems from the language in OCGA § 40-6-391. OCGA § 40-6-391 (a) (1) makes it illegal for a person to drive a car while under the influence of alcohol to the extent that it makes it "less safe" for the person to drive, while OCGA § 40-6-391 (b) makes it illegal for a person to drive a car while under the influence of a prescribed drug if the person is "rendered incapable of driving safely" as a result of the drug. This issue has previously been addressed by Georgia courts. The court in *State v. Kachwalla,* 274 Ga. 886, 887 (561 SE2d 403) (2002), held that the two are "equivalent standards" and therefore one charged with DUI under the "less safe" standard, as opposed to the "rendered incapable of driving safely" standard, has not suffered unconstitutional disparate treatment. Thus, the trial court did not violate the Equal Protection Clause when it gave the "less safe" jury charge nor was it compelled to give the "rendered incapable of driving safely" jury charge when it was requested by Johnson. See *Jones v. State,* 168 Ga. App. 106 (1) (308 SE2d 209) (1983).

3. In his third enumeration of error, Johnson argues that the trial court erred by admitting evidence of his refusal to submit to alco-sensor screening without first establishing a foundation for the admissibility of the evidence. In order for the results of alco-sensor tests to be admissible as evidence, the State must demonstrate that the alco-sensor device is of a design that has been approved by the Georgia Bureau of Investigation. See *Aman v. State*, 223 Ga. App. 309, 310 (477 SE2d 431) (1996).

Johnson argues on appeal that there should be the same foundational requirements for admitting evidence of his refusal to submit to alco-sensor screening as there are for admitting alco-sensor test results as evidence. However Johnson cites authority that only supports the rule that alco-sensor test results require a foundation before such evidence is admissible. These cases do not state that a prosecutor must establish a foundation of the device's acceptability before evidence of a defendant's refusal to submit to testing can be admissible. Nor does it seem logical that the State should be required to establish the same foundation for admitting an alco-sensor refusal as evidence as it must to admit an alco-sensor test result as evidence when the device has not actually been used in the former situation. For these reasons, the trial court did not err by not requiring a foundation for the admission of Johnson's refusal to submit to alco-sensor screening as evidence.

4. In his final enumeration of error, Johnson argues that the trial court erred when it refused his motion to suppress based on the initial seizure of the defendant. "On motion to suppress evidence, the trial judge sits as the trior [sic] of the facts, hears the evidence, and his findings based upon conflicting evidence are analogous to the verdict of a jury and should not be disturbed by a reviewing court if there is any evidence to support it." (Citations and punctuation omitted.) *Dimick v. State*, 178 Ga. App. 60, 61-62 (341 SE2d 914) (1986). Because evidence exists that supports the trial court's finding, the decision to refuse Johnson's motion to suppress should not be disturbed.

Johnson claims that Deputy Shinall had no basis for searching him when he drove his car up the driveway.

There are three tiers of police-citizen encounters: (1) communication between police and citizens involving no coercion or detention and therefore without the compass of the Fourth Amendment, (2) brief seizures that must be supported by reasonable suspicion, and (3) full-scale arrests that must be supported by probable cause. In the first level, police officers may approach citizens, ask for identification, and freely question the citizen without any basis or belief that

the citizen is involved in criminal activity, as long as the officers do not detain the citizen or create the impression that the citizen may not leave.

(Citation and punctuation omitted.) *McClain v. State*, 226 Ga. App. 714, 716 (487 SE2d 471) (1997).

Here, Deputy Shinall approached Johnson's stopped car, asked for his identification, and asked Johnson to get out of his car. "It is well established that an officer's approach of a stopped vehicle and inquiry as to what is going on does not constitute a 'stop' or 'seizure' and 'clearly falls within the realm of the first type of police-citizen encounter.' " (Citation omitted.) *State v. Folk*, 238 Ga. App. 206, 207 (521 SE2d 194) (1999). Therefore Deputy Shinall's initial approach to Johnson in his already-stopped vehicle was a first tier police-citizen encounter. It was only after Deputy Shinall smelled alcohol on Johnson and noticed his bloodshot eyes that he acted upon a reasonable suspicion that Johnson might be intoxicated. The trial court ruled correctly when it denied Johnson's motion to suppress evidence from this first tier police-citizen encounter.

*Judgment affirmed. Miller and Ellington, JJ., concur.*

DECIDED JULY 9, 2004.

*Ashway & Haldi, Charles G. Haldi, Jr., Joe W. Hendricks, Jr., Mathew A. Baker*, for appellant.

*David L. Cannon, Jr., Solicitor-General, Barry W. Hixson, Assistant Solicitor-General*, for appellee.