## A07A1866. SCHLANGER v. THE STATE.
(659 SE2d 823)

BERNES, Judge.

Following a jury trial, Herbert P. Schlanger appeals his convictions for DUI,[1] reckless driving, and failure to maintain a lane. Schlanger contends that the trial court erred in denying his motion to suppress the results of his state-administered blood test; in admitting the results of the blood test over his chain of custody objection; in prohibiting Schlanger's expert from testifying on an issue related to the reliability of the blood test; in curtailing Schlanger's cross-examination of the arresting officer; in giving the jury an erroneous DUI charge; and in allowing the arresting officer to testify that Schlanger requested and received an independent blood test. Finally, Schlanger challenges the sufficiency of the evidence offered in support of his convictions. For the reasons set forth below, we vacate Schlanger's sentence and remand this case to the trial court for resentencing in accordance with this opinion. We affirm the judgment in all other aspects.

The evidence shows that on the evening in question, a Cobb County police officer responded to the scene of a single-car accident, where he encountered Schlanger standing outside of his overturned vehicle. The weather was clear, the traffic was light, and the off-ramp was dry at the time of the accident. Schlanger had nonetheless left the roadway while traveling on the off-ramp of the interstate and his vehicle had landed in the gore area off of the ramp.

The responding officer immediately noticed an odor of alcohol emanating from Schlanger's person. He further observed that Schlanger's speech was slurred, his eyes were bloodshot and watery, and he was unsteady on his feet. Schlanger admitted to the officer that he had consumed four liquor drinks in the three hours preceding the accident, although he claimed that the incident was a result of him having been cut-off by another driver. The officer saw no indication that another vehicle had been involved and there were no witnesses to the accident. Schlanger refused medical treatment from the responding emergency medical personnel.

---

[1] The jury found Schlanger guilty of both "less safe" DUI and "per se" DUI. See *Partridge v. State*, 266 Ga. App. 305 (596 SE2d 778) (2004).

No field sobriety tests were conducted, but based upon the officer's experience and observations in conjunction with Schlanger's admission that he had been drinking, the officer concluded that Schlanger was under the influence of alcohol to the extent that it was less safe for him to drive and arrested him. Schlanger was read the implied consent notice and agreed to take a state-administered blood test.

Schlanger was taken to a local hospital, where he gave a blood sample. His blood tested positive for alcohol with a result of 0.136 gram percent. Schlanger also requested and received an independent blood test on the night of the accident, although he did not admit the results of the independent test at trial.

1. Schlanger contends that the arresting officer lacked probable cause for his arrest and that the results of his blood test should have therefore been suppressed. Specifically, Schlanger argues that the odor of alcohol emanating from his person, his slurred speech, his bloodshot and watery eyes, his unsteadiness on his feet, and his admission that he had been drinking, were insufficient to establish probable cause for his arrest because he may have suffered a head injury in the accident. He argues that some of the physical manifestations of intoxication observed by the officer could have been caused by this alleged head injury.

> The test of probable cause requires merely a probability — less than a certainty but more than a mere suspicion or possibility. To arrest a suspect for driving under the influence, an officer need only have knowledge or reasonably trustworthy information that the suspect was actually in physical control of a moving vehicle, while under the influence of alcohol to a degree which renders him incapable of driving safely. And we have previously found that, even in the absence of the field sobriety tests, *the officer's observation that a suspect had bloodshot, watery eyes and exuded an odor of alcohol was sufficient to show probable cause to arrest him for driving under the influence.*

(Punctuation and footnotes omitted; emphasis supplied.) *State v. Sledge*, 264 Ga. App. 612, 614 (591 SE2d 479) (2003). See also *Kellogg v. State*, 288 Ga. App. 265, 269 (2) (653 SE2d 841) (2007) (defendant's bloodshot and watery eyes, smell of alcohol, admission to drinking, and positive alco-sensor test gave officer probable cause).

Schlanger's reliance on *State v. Gray*, 267 Ga. App. 753 (600 SE2d 626) (2004), is misplaced. There, the trial court found as a matter of fact that the arresting officer's testimony lacked credibility and concluded that the defendant's dazed and confused actions were the

result of the accident — not intoxication — and thus granted the defendant's motion to suppress. Id. at 756 (2). In that case, as in this case, our standard of review required us to defer to the trial court's findings of fact and witness credibility. Id. at 753-754 (1).

> An appellate court reviewing a trial court's order on a motion to suppress evidence must accept the trial court's decisions with regard to questions of fact and credibility unless they are clearly erroneous. The reviewing court must also construe the evidence most favorable to the upholding of the trial court's findings and judgment and must not disturb the findings of the trial judge unless no evidence exists to support them.

(Citation omitted.) *Parker v. State*, 233 Ga. App. 616, 617 (504 SE2d 774) (1998).

Here, the evidence was more than sufficient to support the trial court's determination that Schlanger's conduct and demeanor resulted from intoxication and was not solely a consequence of, but indeed may have been the cause of, his accident. See *Kellogg*, 288 Ga. App. at 269-270 (2); *Slayton v. State*, 281 Ga. App. 650, 653 (1) (637 SE2d 67) (2006); *Jones v. State*, 273 Ga. App. 192, 194-195 (1) (c) (614 SE2d 820) (2005).

2. Schlanger also contends the trial court erred in admitting the blood test results over his objection that the state had failed to sufficiently establish the chain of custody of his blood sample. Schlanger's claim lacks merit.

> To show a chain of custody adequate to preserve the identity of fungible evidence, the [s]tate must prove with reasonable certainty that the evidence is the same as that seized and that there has been no tampering or substitution. The [s]tate is not required to foreclose every possibility of tampering; it need only show reasonable assurance of the identity of the evidence.

(Footnote omitted.) *Stringer v. State*, 285 Ga. App. 599, 603 (2) (647 SE2d 310) (2007). We review a trial court's finding that the state adequately established chain of custody for an abuse of discretion. Id.

At trial, the technician who drew Schlanger's blood on behalf of the state testified that when taking the blood sample, she used instruments from a sealed kit designed specifically for that purpose. After drawing the blood, the technician labeled the blood tubes with her initials and the date, and sealed the tubes. The tubes, which had

not expired, contained the preservatives sodium flouride and potassium oxalate. She placed the sealed tubes into a sealed bag and placed the bag into a box which she again sealed with her initials and dated. She then handed the box, which was addressed to the Georgia Bureau of Investigation (GBI), to the arresting officer.

The arresting officer testified that he took the box from the technician and kept it in his possession until he placed it into the U. S. mail the following day. The GBI forensic toxicologist who tested Schlanger's blood sample testified to the GBI's handling of the evidence. Upon the GBI's receipt of the box containing Schlanger's blood sample, it was inspected to ensure that it had been properly sealed. The box was then opened and inspected to confirm that the tubes had been properly labeled and sealed, had not leaked, and showed no signs of tampering.

The test tubes containing the blood sample were then placed into a different bag which was sealed, labeled, photographed, and given a unique bar code and case number for computer identification. The bag containing the sample was then placed into a refrigerated storage unit until it was retrieved by the toxicologist for testing. The toxicologist explained that access to the storage unit is very limited and requires any individual gaining access to use a pass containing a bar code and an individual personal identification number prior to gaining entry to the area. When the toxicologist retrieved the sample for testing, she confirmed that the tubes were not damaged and their seals were intact.

This evidence was sufficient to meet the state's burden of proving reasonable assurance of the identity of the sample. *Stringer*, 285 Ga. App. at 604-605 (2). It follows that the trial court did not abuse its discretion in admitting the challenged evidence.

Schlanger nonetheless argues that the condition of the blood sample evidence was questionable because it took nine days from the day it was mailed to be received by the GBI. But, once it has been established that the blood sample is the same as that which was seized, any argument as to the purity of the sample goes to its weight, not admissibility. *Smith v. City of East Point*, 189 Ga. App. 454, 456 (3) (376 SE2d 215) (1988). See also *Maldonado v. State*, 268 Ga. App. 691 (1) (603 SE2d 58) (2004); *Campbell v. State*, 136 Ga. App. 338, 341 (3) (221 SE2d 212) (1975) ("In light of the sealed nature of the container and the lack of any evidence of tampering, we are convinced that the chain of custody is unbroken up to its opening by the state analyst.").

3. Schlanger next argues the trial court erroneously excluded testimony from his expert witness relating to the reliability of the blood sample analysis. We disagree.

> It is a matter within the sound discretion of the trial judge as to whether a witness has such learning and experience in a particular art, science or profession as to entitle him to be deemed prima facie an expert. Thus, the trial court's decision as to a witness' qualifications to testify as an expert will be reversed only if that discretion is abused.

(Citation and footnote omitted.) *Nel v. State*, 252 Ga. App. 761, 764 (5) (557 SE2d 44) (2001).

At trial, Schlanger maintained that the results of his blood test were unreliable because his blood sample was transported under unknown conditions and presumably not refrigerated while in transit to the GBI lab for testing. In support of this theory, Schlanger attempted to tender his expert, Dr. Lonnie Horowitz, as an expert on blood sample storage and handling. Dr. Horowitz testified that he was a physician trained in trauma surgery but that he was currently practicing bariatric medicine, focusing on patients with metabolic diseases, eating disorders, obesity problems, and nutrition needs. The doctor testified that he had no specific training or expertise in the area of the reliability of blood samples when storage and handling conditions were unknown and admitted that he could not cite any specific authoritative references or studies to support Schlanger's contention that the blood sample was unreliable because it had not been refrigerated while in transit to the GBI.

In light of the doctor's admissions, the trial court did not abuse its discretion in excluding the doctor's testimony based upon the court's conclusion that he lacked the specialized knowledge in the area of handling blood alcohol samples necessary to give an opinion on the issue. See *Turner v. State*, 258 Ga. 97, 100 (3) (365 SE2d 822) (1988); *Nel*, 252 Ga. App. at 764-765 (5).

4. Schlanger next argues that the trial court improperly curtailed his cross-examination of the arresting officer. While questioning the officer, Schlanger attempted to elicit testimony regarding a separate and totally unrelated DUI arrest that the officer had purportedly made for which the unknown defendant was charged with "less safe" DUI but not with a "per se" violation because the defendant's blood alcohol content was only 0.05. Schlanger contended that he wanted to show that the officer was overzealous in prosecuting those individuals whom he stopped for driving under the influence.

Although we agree with Schlanger that every criminal defendant is entitled to a thorough and sifting cross-examination of the state's witnesses, OCGA § 24-9-64, that right is not completely unrestrained. Rather,

> within carefully protected legal parameters, the scope of cross-examination lies within the sound discretion of the trial court; this discretion will not be disturbed by an appellate court absent manifest abuse. Basically, the confrontation clause guarantees an opportunity for effective cross-examination, not cross-examination that is effective in whatever way and to whatever extent the defense might wish.

(Citation and punctuation omitted.) *Drogan v. State*, 272 Ga. App. 645, 650 (4) (613 SE2d 195) (2005). Here, the trial court ruled that testimony involving a totally unrelated arrest was irrelevant to Schlanger's case after first giving Schlanger the opportunity to establish its relevance. The trial court did not abuse its discretion in rejecting Schlanger's proposed line of questioning. See id. See also *Wheeler v. State*, 212 Ga. App. 638, 639 (2) (442 SE2d 906) (1994).

5. In two separate enumerations of error, Schlanger argues both that the trial court erred in failing to give his requested jury charge on "less safe" DUI and that the charge given was contradictory and erroneous. The following language was included in the trial court's given instruction:

> I charge you that it is not necessary for the state to show that the accused was drunk. It's sufficient if the state shows beyond a reasonable doubt that the accused was under the influence of alcohol to the extent that it was less safe for him to drive a car than it would have been if he were not so affected, whether drunk or not.
>
> . . .
>
> A Defendant is not guilty of ["less safe" DUI] unless he is intoxicated to a degree which renders him incapable of driving safely. Intoxicated means under the influence of an intoxicating liquor or drug. Thus a person who has consumed some alcohol may be under the influence of alcohol, but the law only criminalizes such if one drives and is so intoxicated or under the influence that one is less safe to drive. . . .

(a) Citing *State v. Beck*, 275 Ga. 688 (572 SE2d 626) (2002) and *State v. Kachwalla*, 274 Ga. 886 (561 SE2d 403) (2002), Schlanger asserts that the trial court erred in failing to grant his request to give the jury the following instruction:

> To establish that a driver is driving under the influence of alcohol, the phrase "less safe to drive" and the phrase "rendered incapable of driving safely" both describe the same standard of impairment that must be proven.

We disagree.

As an initial matter, we note that the trial court's instruction does encompass both the "less safe to drive" and the "rendered incapable of driving safely" standards as proposed by Schlanger. Nonetheless, "[a] requested charge needs to be given only where it embraces a correct and complete principle of law adjusted to the facts and which is not otherwise included in the general instructions given." (Citations and punctuation omitted.) *Drogan*, 272 Ga. App. at 648-649 (3). As we have previously held, the trial court's refusal to give Schlanger's requested charge does not constitute reversible error. See id.; *Johnson v. State*, 268 Ga. App. 426, 428 (2) (602 SE2d 177) (2004). Cf. *Jones v. State*, 168 Ga. App. 106 (1) (308 SE2d 209) (1983).

(b) We also reject Schlanger's argument that the charge as given was contradictory and erroneous. Contrary to his asserted position, the legal standard for determining whether a person is guilty of "less safe" DUI *is* whether "the accused was under the influence of alcohol to the extent that it was less safe for him to drive a car than it would have been if he were not so affected." (Punctuation omitted.) *McWilliams v. State*, 287 Ga. App. 585, 587 (651 SE2d 849) (2007). See OCGA § 40-6-391 (a) (1); *Shelton v. State*, 236 Ga. App. 611, 612-613 (3) (512 SE2d 17) (1999). We decline Schlanger's proposal to adopt a different standard in this case.

6. Schlanger next contends the trial court erred in allowing the arresting officer to testify that Schlanger had requested and received an independent blood test in accordance with his rights under the implied consent laws. Schlanger argues that the testimony was irrelevant. We disagree.

The legislative purpose behind the implied consent law is to allow a DUI suspect to obtain an independent test after taking the test requested by the state. OCGA § 40-6-392 (a) (3). See *Jones v. State*, 218 Ga. App. 675, 675-676 (2) (462 SE2d 804) (1995).

> This procedure helps dissipate any feelings the DUI suspect may have of collusion, fraud, or inaccuracy in the [s]tate-administered testing. It also enables the suspect to obtain independent evidence to refute a possible erroneous [s]tate test result.

Id. at 676 (2).

During the trial, Schlanger hotly contested the results of the state's blood test, arguing that the results were skewed and unreliable due to the unknown storage conditions of his blood sample while en route to the GBI lab. Consequently, the fact that he requested and received an independent test which he failed to produce at trial was relevant to a material issue in the case. OCGA § 24-2-1. Cf. *Bedley v. State*, 189 Ga. App. 90, 91 (2) (374 SE2d 841) (1988). The state would have been further authorized to comment on Schlanger's failure to produce the results of the independent test, had it chosen to do so.[2] *Williams v. State*, 285 Ga. App. 190, 195-196 (3) (c) (645 SE2d 676) (2007). See *Blige v. State*, 263 Ga. 244, 245 (2) (430 SE2d 761) (1993) (before a party can comment on the opposing side's failure to produce certain evidence, the existence of that evidence must first be placed into evidence). It follows that the trial court did not abuse its discretion in admitting the challenged evidence.

Moreover, even if we assume arguendo that admission of the challenged testimony was error, any such error was harmless given the overwhelming evidence of Schlanger's guilt. See *Jones v. State*, 200 Ga. App. 666 (3) (409 SE2d 251) (1991).

7. Finally, Schlanger argues that the evidence was insufficient to support his convictions on failure to maintain a lane, reckless driving, and "less safe" DUI. Again, we disagree.

(a) *Failure to Maintain a Lane.* OCGA § 40-6-48 (1) provides that "[a] vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from such lane until the driver has first ascertained that such movement can be made with safety." The fact that Schlanger's vehicle exited the roadway before coming to rest upside down in the adjacent gore area provided sufficient evidence that he failed to maintain his lane of traffic. Id.; *Crenshaw v. State*, 280 Ga. App. 568, 569 (634 SE2d 520) (2006).

(b) *Reckless Driving.* In order to convict Schlanger of reckless driving, the state had to prove that he drove his vehicle "in reckless disregard for the safety of persons or property." OCGA § 40-6-390 (a). The state presented evidence that Schlanger was legally intoxicated and, by his own admission, was driving his vehicle "at some significant rate of speed" when he took his eyes off the roadway and became unable to "handle the speed." After "fishtail[ing]" and "skidding," he began "spinning and rolling" as he exited the roadway. This evidence authorized the jury to find Schlanger guilty of reckless driving beyond a reasonable doubt. See, e.g., *Fraser v. State*, 263 Ga. App.

---

[2] The state's reference to the independent test was but a brief reference in the course of a narrative by the arresting officer. No mention of the independent test was made by the state in its closing argument. It was Schlanger in his own testimony and argument who chose to discuss the independent test.

764, 765-766 (1) (589 SE2d 329) (2003) (recognizing that speeding alone can form the basis of a reckless driving conviction); *Carson v. State*, 250 Ga. App. 876 (1) (553 SE2d 312) (2001) (driver exited the road into a grassy area and hit a pedestrian). The jury obviously chose to disbelieve Schlanger's claim that his departure from the roadway resulted from the negligence of a second, unidentified driver as opposed to his own and the jury was authorized to do so. See *Rylee v. State*, 288 Ga. App. 784, 787 (3) (a) (655 SE2d 239) (2007).

(c) *"Less Safe" DUI.* In addition to Schlanger having slurred speech and bloodshot, watery eyes, being unsteady on his feet, admitting to drinking, having a blood-alcohol content of 0.136 gram percent, and driving his car off the roadway, the experienced arresting officer testified that, in his opinion, Schlanger was less safe to drive. See *Lewis v. State*, 214 Ga. App. 830, 832 (1) (449 SE2d 535) (1994) ("A police officer may give opinion testimony as to the state of sobriety of a DUI suspect and whether [the suspect] was under the influence to the extent it made him less safe to drive.") (citations omitted). This evidence was sufficient to sustain Schlanger's conviction. OCGA § 40-6-391 (a) (1). See *Jones*, 273 Ga. App. at 194-195 (1) (c); *Shoemake v. State*, 266 Ga. App. 342, 345 (3) (b) (596 SE2d 805) (2004).

8. Lastly, although the trial court set forth on the sentencing sheet each of the four offenses for which Schlanger was convicted and entered judgment on those convictions, the trial court imposed a single sentence on all counts of twenty-four months, the duration of which was to be probated with the exception of ten days. Compare *Bass v. State*, 284 Ga. App. 331, 332 (643 SE2d 851) (2007) (when the trial court fails entirely to enter a written sentence on one or more counts, the case remains pending in the trial court and is not a final judgment ripe for review). Further, the trial court failed to expressly merge Schlanger's DUI convictions for sentencing purposes. See *Partridge v. State*, 266 Ga. App. 305, 306 (596 SE2d 778) (2004). Thus, as conceded by both Schlanger and the state, we must vacate Schlanger's sentence and remand this case to the trial court for resentencing. On remand, the trial court is instructed to merge Schlanger's "less safe" DUI conviction into the "per se" DUI conviction, and to otherwise impose separate sentences on each of the three remaining convictions. We affirm in all other respects.

*Judgment affirmed in part and vacated in part, and case remanded with instruction. Blackburn, P. J., concurs. Ruffin, J., concurs in judgment only.*

DECIDED MARCH 21, 2008 — ▮▮▮▮▮▮▮▮▮

*John W. Mrosek*, for appellant.

*Barry E. Morgan, Solicitor-General, Rebecca Walton-McFalls, Assistant Solicitor-General,* for appellee.