**FOURTH DIVISION**
**BARNES, P. J.,**
**RAY and MCMILLIAN, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/

June 18, 2015

# In the Court of Appeals of Georgia

A15A0740. SCOTT v. THE STATE.

McMillian, Judge.

Carol Scott was charged with driving under the influence to the extent it was less safe to drive in violation of OCGA § 40-6-391 (a) (1) ("DUI less safe"), driving under the influence with a blood alcohol concentration in excess of the legal limit in violation of OCGA § 40-6-391 (a) (5) ("DUI per se"), and failure to maintain lane in violation of OCGA § 40-6-48. A jury convicted Scott of DUI less safe and acquitted her of the remaining charges. Scott filed a motion for new trial, which the trial court denied following a hearing. She appeals, arguing that her trial counsel was ineffective and that the trial court erred in numerous ways, including by refusing to dismiss a juror, denying her motion in limine to exclude certain evidence, denying her motion for mistrial based on improper testimony, violating OCGA § 17-8-57, and refusing

to give a requested jury charge. Having carefully considered these contentions, we now affirm.

The evidence, construed to support the jury's verdict,[1] shows that on the night of January 4, 2013, Trooper Thomas Bailey with the Georgia State Patrol initiated a traffic stop of the vehicle Scott was driving after he saw her cross at least one tire over the centerline on four different occasions. Trooper Bailey noticed a very strong odor of an alcoholic beverage coming from inside the vehicle and asked Scott if she had been drinking. Scott told him that she had consumed one glass of wine, which Trooper Bailey did not think was consistent with the strong odor of alcohol he detected, and he asked Scott to step outside the vehicle. Trooper Bailey testified that the odor of alcohol coming from Scott's person as she stood outside the vehicle was "very intense," and that he noticed she had other signs of impairment, such as blood shot, watery eyes. Based on these observations, Trooper Bailey asked Scott if she would submit to a preliminary roadside breath test. Scott said she would "rather not" take the roadside breath test, but agreed to submit to other field sobriety tests, including the horizontal gaze nystagmus ("HGN") test, the walk-and-turn test, and the one-leg-stand test. Trooper Bailey testified that based on his training and experience,

---

[1] *Jackson v. Virginia*, 443 U.S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

2

Scott's performance on all three tests plus the other signs he had observed indicated to him that she was impaired and "didn't need to be driving." He also testified that a recording of Scott performing the field sobriety tests was made by a video camera mounted inside his car, and that video was introduced by the State and played for the jury at trial.

Trooper Bailey placed Scott under arrest and read her the appropriate implied consent warning. Scott initially equivocated about whether she wanted to take the State's breath test, but she agreed to take the test before they arrived at the police station. Although Scott appeared to blow into the machine, she failed to give a sufficient sample for testing, and Trooper Bailey asked Scott if she would consent to a blood test instead. Scott consented and was transported to a local hospital. Subsequent testing at the Georgia Bureau of Investigation Crime Lab revealed that Scott's blood alcohol concentration level was 0.115 grams.

Other evidence will be set forth as necessary to address Scott's specific claims of error on appeal.

1. Scott first contends that the trial court erred by refusing to dismiss a juror for alleged improper contact with Trooper Bailey, who was the State's main witness at trial.

As to this issue, the transcript shows that immediately after the jury was selected, the trial court released the jurors for lunch with instructions that they not "discuss this case with anyone. You cannot discuss this case with any parties. You – and if anyone tries to talk to you about the case, you need to let the Bailiff know immediately upon reporting back for jury duty. But no one can talk to you." However, when court reconvened, Scott's trial counsel informed the trial judge that it had been brought to his attention that as they broke for lunch, one of the jurors had made a hand gesture to Trooper Bailey, whom the State had identified as the arresting officer in the case prior to voir dire. Trial counsel requested and was granted permission to question Trooper Bailey, who stated that a juror had approached him, but that he did not know the juror and immediately made a gesture back to the juror to indicate that he could not talk to him. The prosecuting attorney also stated on the record that he saw the juror approach Trooper Bailey and that he also indicated to the juror that "this doesn't need to be occurring." Both Trooper Bailey and the prosecuting attorney said there was no further communication between the juror and Trooper Bailey after this point.

Defense counsel then questioned the juror, who stated that he had approached Trooper Bailey and the State's attorney during the lunch break to say "hello," but that

4

was the extent of the communication. The juror also testified that he had met Trooper Bailey once before at a gas station and that they talked about fishing for approximately ten minutes. The trial court asked the juror if this previous contact with Trooper Bailey would prevent him from being fair and impartial, and the juror replied "[n]ot one bit." Without elaborating, defense counsel then made a motion to replace the juror with the alternate, and the trial court denied the motion.

Scott now argues that the trial court erred by not dismissing the juror for the improper contact with the State's key witness. Additionally, Scott contends the improper contact issue is compounded by the juror's "critical revelation" that he had failed to disclose during voir dire that he had met and conversed with Trooper Bailey in the past.

Although Scott now argues that the disclosure of the brief conversation between the juror and Trooper Bailey was in "complete contradiction" to the juror's answers during voir dire, we do not have a transcript of the voir dire and thus can only rely on Scott's representation that the juror failed to raise his hand when trial counsel asked if anyone knew Trooper Bailey. Moreover, trial counsel did not avail himself of the opportunity to question the juror about his apparently contradictory answer and did not make any specific argument or mention this failure to disclose in

support of his motion to replace the juror. Accordingly, we do not believe the juror's failure to disclose his prior, brief conversation with Trooper Bailey in response to an inquiry about whether he "knew" Trooper Bailey significantly impacts our analysis in this case.

In any event, we do not believe that the contact between the juror and Trooper Bailey entitles Scott to a new trial.

> There is a presumption of prejudice to the defendant when an irregularity in the conduct of a juror is shown and the burden is on the prosecution to prove beyond a reasonable doubt that no harm has occurred. However, a jury verdict will not be upset solely because of such conduct, unless the (conduct is) so prejudicial that the verdict must be deemed "inherently lacking in due process." Our inquiry then must be directed to whether this error is so inherently prejudicial as to require a new trial, or whether it is an immaterial irregularity without opportunity for injury. *Sims v. State*, 266 Ga. 417, 419 (3) (467 SE2d 574) (1996) (citations and punctuation omitted).

*Simmons v. State*, 291 Ga. 705, 707 (4) (733 SE2d 280) (2012). In this case, we have little hesitancy in concluding that to the extent there was an improper communication between the juror and the State's witness, such communication was inconsequential. See *Collins v. State*, 290 Ga. 505, 506-507 (3) (722 SE2d 719) (2012). The juror testified that he was merely attempting to say hello to the Trooper and that he had

6

briefly talked to him on a prior occasion about fishing. Trooper Bailey did not remember meeting the juror, and it was undisputed that there was no prior relationship between the two beyond the brief conversation. The brief contact during the court recess did not involve an exchange of information about the case, and it does not appear that the juror attempted to communicate about the case, which was in line with the trial court's instructions. The juror unequivocally told the court that his prior contact with Trooper Bailey would not affect his ability to be a fair and impartial juror, and indeed the jury of which he was a member ultimately acquitted Scott of two of the three charges against her. The record before us thus leaves no reasonable doubt that the juror's contact with the State's witness caused no prejudice to Scott. *Simmons*, 291 Ga. at 707-708 (4); *Collins*, 290 Ga. at 507 (3).

2. Scott next contends that the trial court erred by denying her motion in limine seeking to prohibit the State from introducing evidence concerning an independent blood test. As to this issue, the record shows that on the eve of trial, Scott's trial attorney made a motion to exclude any reference to the independent test, which had been requested by Scott's previous attorney,[2] arguing that the State had not provided

---

[2] The trial court read on the record the order it had entered in response to this request, in which the court had ordered that Scott be provided with a sufficient portion of her blood sample to allow her to conduct an independent test.

him with any proof that an independent test was actually performed. Thus, he argued, any reference by the State to an independent test that "may or may not have taken place" would be impermissibly burden shifting. Noting that this argument seemed to ignore that Scott, rather than the State, would have the results of any independent test, the trial court denied Scott's motion.

On appeal, Scott argues the trial court erred by denying her motion and points to "several instances throughout the trial where the independent blood test was referenced," which she contends were highly prejudicial and improperly burden-shifting because in effect the jury was told that the State administered blood test was in fact accurate or otherwise the defense would have introduced the results of the independent test. We find this argument unavailing for several reasons.

The transcript shows that from the beginning of the case, Scott challenged the process used to collect the blood, suggesting that the blood draw had been tainted. Further, Scott, who is an emergency room doctor, testified at length concerning what she perceived as irregularities in the collection and transmission of her blood samples, offering multiple reasons why the results of her tests may have been inaccurate, including agreeing with her counsel's suggestion that it may not have been her blood

8

that the State analyzed. Moreover, Scott argued in closing that "[s]omething happened. Either it wasn't her blood or something occurred that tainted that . . . test."

Although Scott acknowledges that in *Schlanger v. State*, 290 Ga. App. 407, 414 (6) (659 SE2d 823) (2008) (physical precedent only), we previously held that testimony that a defendant had requested and had been permitted to obtain an independent test was properly admitted at trial after the defendant "hotly contested" the results of the State's test, she argues that *Schlanger* is distinguishable. We disagree. Scott points out that in *Schlanger*, we noted that the State elicited only minimal testimony about the independent test and did not refer to the failure to produce the test results in closing argument, but she fails to mention that we appended this footnote to our statement in the opinion that the State would have been "further authorized to comment" on the defendant's failure to produce the independent test results had it chosen to do so. Id.

Also contrary to Scott's argument on appeal, the State in this case made only passing references to the independent tests in its closing argument and in response to Scott's closing argument that the blood tested was not her blood or that the draw was tainted, which unlike the cases Scott cites, did not rise to the level of being impermissibly burden shifting. Compare *State v. Mitchell*, 326 Ga. App. 370, 372 (4)

9

(756 SE2d 609) (2014) (impermissibly burden shifting for the State to argue defendant failed to avail himself of the opportunity to prove his innocence by refusing to take the State's breath test); *Pinch v. State*, 265 Ga. App. 1, 6 (4) (593 SE2d 1) (2003) (State attorney's comments to the jury that defendant could have exonerated himself by taking that State's breath test were improper). In sum, Scott is not entitled to a new trial on this basis.

3. Scott also argues that the trial court should have granted a motion for mistrial when Trooper Bailey testified about the "ultimate issue" at trial, pointing to two instances where Trooper Bailey was allowed to testify over objection that he believed Scott had an "obvious impairment" and that she "didn't need to be driving."

Again we find no error. This Court has held on numerous occasions that "[a] police officer may give opinion testimony as to the state of sobriety of a DUI suspect and whether he was under the influence to the extent it made him less safe to drive." (Citation and punctuation omitted.) *Jaffray v. State*, 306 Ga. App. 469, 471 (1) (702 SE2d 742) (2010). E.g., *Holman v. State*, 329 Ga. App. 393, 401 (2) (c) (765 SE2d 614) (2014); *Driver v. State*, 240 Ga. App. 513, 515 (3) (523 SE2d 919) (1999); *Church v. State,* 210 Ga. App. 670, 671 (2) (436 SE2d 809) (1993). Additionally, the trial court gave the jury a curative or cautionary instruction to the effect that although

10

Trooper Bailey was permitted to give his opinion concerning Scott's level of impairment, including whether she was less safe to drive, it was solely for the jury to determine whether Scott was impaired to the extent she was a less safe driver. This enumeration is without merit.

4. Scott next contends that her conviction should be reversed because the trial court expressed an opinion and exhibited overall bias in violation of OCGA § 17-8-57.[3] For a new trial to be required under this section, "the trial court's comments must pertain to a disputed issue of fact." *State v. Gardner*, 286 Ga. 633, 634-635 (690 SE2d 164) (2010).

Scott cites five instances where she alleges that it appeared that the trial court was assisting the State in its prosecution of the case and argues that these instances taken as a whole could demonstrate the trial court's bias. We consider each of these instances in turn.

(a) Scott contends that the trial court improperly suggested the basis to exempt Trooper Bailey from the rule of sequestration when the trial court stated: "Well, Trooper Bailey is the prosecutor. Are you [the prosecuting attorney] asking that he

---

[3] OCGA § 17-8-57 provides: "It is error for any judge in any criminal case, during its progress or in his charge to the jury, to express or intimate his opinion as to what has or has not been proved or as to the guilt of the accused."

be allowed to stay in the courtroom for the orderly presentation of your evidence?" However, this remark was made in the context of defense counsel's request that Trooper Bailey be excluded from the courtroom until after the first witness testified, who was being called "out of turn" before Trooper Bailey. In order to rule on Scott's objection, the trial court was required to exercise its discretion concerning whether to allow an exception in implementing the rule of sequestration. See *Smith v. State*, 324 Ga. App. 100, 103 (1) (749 SE2d 395) (2013); OCGA § 24-6-615 (2) (concerning the rule of sequestration). The trial court's comments did not constitute a comment before the jury on a disputed issue of fact or intimate an opinion about Scott's guilt, and the court's ruling on this routine matter did not exhibit an unfavorable bias toward the defense.

(b) Scott also argues that it appeared that the trial court was improperly assisting the State when the trial court informed the prosecution of specific questions it needed to ask before a photograph could be introduced. This exchange occurred outside the presence of the jury as part of a colloquy in response to Scott's objection to the introduction of an exhibit. The trial court *asked* the State if it had questioned the witness concerning whether the photograph was a true and accurate depiction of what was shown in the exhibit, noting that was the standard for admission. However,

the trial court never expressed an opinion concerning whether the necessary showing had been made. Instead, the trial court indicated that he had not heard the witness testify to that effect and that he would not admit the photograph if the State could not lay the proper foundation or, in the alternative, would simply not rule on the objection if the State withdrew the exhibit. The State's attorney responded that he had asked the witness the appropriate question, and the record discloses that the witness had in fact testified that the photograph was a fair and accurate representation of what was depicted. The State posed the question again when the witness resumed testifying, at which time the witness again testified that the photograph was a true and accurate representation, and the trial court admitted the exhibit following this testimony.

"Although we strongly discourage the giving of direction or the use of language that could create an appearance of alignment between the trial court and either the prosecution or defense," the above exchange demonstrates that the trial court did not "express or intimate (its) opinion as to what has or has not been proved," but instead engaged in a colloquy outside the presence of the jury concerning whether the standard for admission of certain evidence had been met. *Gardner*, 286 Ga. at 635. "The rule set forth in OCGA § 17-8-57 does not generally extend to colloquies between the judge and counsel regarding the admissibility of

13

evidence." (Citations and punctuation omitted.) *Paslay v. State*, 285 Ga. 616, 618 (3) (680 SE2d 853) (2009). Accordingly, this contention is without merit. See *Allen v. State*, 296 Ga. 785 (770 SE2d 824) (2015).

(c) Scott next contends that the trial court improperly assisted the State during Scott's cross-examination of Trooper Bailey by interjecting what the appropriate objection should be to defense counsel's line of questioning. As to this issue, the record shows that after the State objected on the basis that defense counsel was testifying, the trial court informed the State that it had failed to make a proper objection and the prosecuting attorney rephrased the objection. The trial court then sustained the objection, but commented a hearsay objection would have been "better." However, after Scott's attorney offered an additional explanation of the nature of questions he was posing to the witness, the trial court reversed its ruling and actually aided the defense attorney in framing the question so it would not be objectionable before allowing the witness to answer the question. Viewed as a whole, we do not believe that the trial court exhibited improper bias or favoritism toward or against either the State or the defendant during this exchange.

(d) Scott also argues the trial court exhibited favoritism toward the State when during cross-examination by the State, the trial court interrupted Scott's testimony to

14

instruct her to answer "yes or no" before explaining her answers and cautioned her not to argue with the prosecuting attorney. Scott asserts the trial court's conduct showed bias against Scott because the court allowed Trooper Bailey to give long narrative answers, while it curtailed Scott's answers. The transcript reveals, however, that the trial court did not interrupt Scott while she was giving a long narrative answer and that her answer to the State's question could in fact be viewed as non-responsive and argumentative. Moreover, on the face of the record, the trial court appeared to act courteously toward Scott and exhibited no hostility against her. This exchange in no way violated OCGA § 17-8-57.

(e) Lastly, Scott points to a remark the trial court made during a discussion with trial counsel about where the jury would go for dinner. Scott's trial counsel suggested that the jurors go to the "Linger Longer," which was the restaurant where Scott admitted that she had a glass of wine the night she was stopped. The trial court made a remark about returning to the "scene of the crime" and then interjected "allegedly." However, the trial court did not comment on a *disputed* fact, since Scott admitted she had a glass of wine at the restaurant the night she was stopped, and we do not believe that the jury conceivably would construe this statement made during a seemingly light-hearted exchange between defense counsel and the trial court as a commentary

15

on the ultimate issue of whether Scott was guilty of driving under the influence. This contention thus also affords no basis for a retrial. Cf. *Rouse v. State*, 296 Ga. 213, 215 (2) (765 SE2d 879) (2014) (trial court's statement "unambiguously suggested" that the essential element of venue had been established or was not in dispute).

In sum, having reviewed Scott's contentions concerning the trial court's alleged favorable bias toward the State, both individually and collectively, we conclude that a new trial is not warranted on this basis. Cf. *Murphy v. State*, 290 Ga. 459, 460 (2) (722 SE2d 51) (2012) (new trial required where trial judge's remarks could be construed as a favorable comment on the credibility of a State's witness); *Johnson v. State*, 278 Ga. 344, 346-347 (3) (602 SE2d 623) (2004) (new trial granted where trial court was unduly hostile to defense counsel, told counsel to "sit down and shut up," interposed objections, berated counsel, referred to State's witness as "our" witnesses, and instructed the State in an ex parte communication to develop the record on a certain issue).

5. Scott next enumerates as error the trial court's refusal to give her request to charge to the effect that HGN and field sobriety tests cannot be used to quantify a blood alcohol content over 0.10 grams.

As an initial matter, we note a possible procedural impediment to our consideration of this issue. Although Scott apparently submitted her request in writing, the requested charge is not included in the record on appeal. Accordingly, we do not know the exact contents of the requested charge, which under certain circumstances might preclude our review of this enumeration. However, we will exercise our discretion to review this issue on the merits, since we are able to sufficiently glean the contents of the requested charge from the transcript.

Turning to the merits, Scott contends the trial court should have given her requested charge based on *Bravo v. State*, 304 Ga. App. 243, 246-249 (1) (696 SE2d 79) (2010), in which we held that the arresting officer's testimony identifying a specific numeric blood alcohol content based solely on defendant's HGN results should have been excluded. Thus, she argues her requested charge was authorized in this case based on Trooper Bailey's testimony during direct examination that "in our studies and the way we were trained, just by the field sobriety alone, it is between [a] 93 and 95 percent success rate of them being a .1 or higher on the side of the road at that particular time." However, *Bravo* did not concern a request to charge, and contrary to Scott's argument on appeal, this Court has previously held that such testimony is admissible. See *Kirkland v. State*, 253 Ga. App. 414 (559 SE2d 161)

17

(2002). Further, we specifically recognized this holding in *Bravo,* when we acknowledged that "we have previously concluded that field sobriety tests, . . . are admissible to show that a detainee's BAC [Blood Alcohol Content] exceeds a particular impairing level." 304 Ga. App. at 247-248 & n. 15. The testimony we deemed inadmissible in *Bravo* was much narrower and more specific because it concerned the arresting officer's identification of a *specific numeric* BAC level based solely on defendant's HGN results. Accordingly, Scott has failed to show that the trial court erred by refusing to give her requested charge.[4]

6. Lastly, Scott contends that her trial counsel rendered ineffective assistance of counsel when he failed to object to other instances[5] of Trooper Bailey's testimony that she contends also went to the ultimate issue of whether Scott was impaired to the extent that she was less safe to drive. However, as we held in Division 3, such

---

[4] With express permission of Scott's trial counsel, Trooper Bailey also gave a "guesstimate" of the level of alcohol concentration in Scott's blood in order to answer defense counsel's question concerning the rate at which Scott's blood alcohol would have dissipated to the point she would be safe to drive. However, Scott does not cite to this testimony in her brief on appeal to support her argument that the trial charge should have given her requested charge.

[5] As discussed in Division 3, trial counsel did object and move for a mistrial on two occasions during Trooper Bailey's testimony on the basis that his testimony invaded the jury's province to decide the ultimate issue.

18

testimony was admissible; it therefore follows that Scott's trial counsel was not ineffective for failing to make a meritless objection. E.g., *Bonner v. State*, 295 Ga. 10, 14 (2) (b) (757 SE2d 118) (2014) (defendant failed to establish ineffective assistance because he failed to show that a motion for mistrial would have been meritorious); *Wesley v. State*, 286 Ga. 355, 356 (3) (a) (689 SE2d 280) (2010) (trial court did not perform deficiently by failing to make a meritless objection).

*Judgment affirmed. Barnes, P. J., concurs. Ray, J., concurs in Divisions 1, 3, 4, 5 and 6, and in judgment only as to Division 2.*